607 So.2d 752 (1992)
Charles A. CHAMPAGNE, Individually and as the Administrator (SIC) of the Minors, Crystal Clement, Cory Clement, and Chelsie Lynn Champagne, and Jeannie Cunningham Champagne
v.
The HARTFORD CASUALTY INSURANCE GROUP, the Administrator of the Succession of Stacey L. Duplantis, and Dixie Lloyd's Insurance Company.
No. CA911179.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
*754 Brian Marceaux, Houma, for plaintiff and appellee Charles A. Champagne.
Michael Cordes, New Orleans, for defendant and appellant Hartford Cas. Ins. Co.
Before WATKINS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
Charles A. Champagne suffered personal injuries in a motor vehicle accident in which the pick-up truck he was driving was struck head-on by a vehicle driven by Stacey L. Duplantis. It is undisputed that Duplantis was solely at fault in causing the accident.
It is also uncontradicted that at the time of the accident Champagne was employed by Trico Marine Operators, Inc. (Trico Marine); he was driving a company truck on company business; and the accident occurred in the course and scope of his employment with Trico Marine. As a result of his injuries, Champagne received what was characterized as "worker's compensation benefits" from Trico Marine.
Duplantis carried the minimum required limits ($10,000/$20,000) in auto liability insurance. In view of the extent of Champagne's injuries, Duplantis was underinsured. Trico Marine carried a business automobile liability and UM policy on the truck that Champagne was driving. The policy was written by the Hartford Casualty Insurance Company (HCIC).
Champagne instituted this action against the administrator of the Succession of Stacey L. Duplantis; Duplantis' insurer, Dixie Lloyds Insurance Company; and HCIC, Trico Marine's UM carrier. Champagne subsequently filed supplemental and amending petitions seeking statutory penalties and attorney's fees.
The business auto policy as written provided liability limits of one million dollars and UM limits of $20,000, which HCIC initially asserted were the applicable UM limits. Plaintiffs contended that the applicable UM limit was one million dollars because Trico Marine had not executed a written waiver specifically rejecting the greater limits. Plaintiffs filed a Motion for Summary Judgment and/or Declaratory Judgment against Dixie Lloyds and HCIC regarding the UM policy limits. Dixie Lloyds stipulated the fault of its insured and that its policy limits were $10,000. HCIC subsequently entered into a consent judgment with plaintiffs agreeing that the HCIC policy provided $1,000,000 in UM coverage and that "the time period for Hartford to make a McDill tender commences on Monday, June 11, 1990."
Hartford Accident and Indemnity Company, the worker's compensation and employer's liability carrier for Trico Marine, intervened in this action for reimbursement of alleged worker's compensation payments paid to Champagne. Champagne filed a motion for summary judgment against the intervenor contending that Champagne was a seaman and the benefits he received were maintenance and cure, not worker's compensation, and as a result thereof, the intervenor could recover only against the third party tortfeasor, not against the UM carrier. The trial court rendered a partial summary judgment in favor of Champagne, holding that Champagne was a "seaman" at the time of the accident. The court reserved for trial a ruling on the issue of whether the intervenor could recover against HCIC.
After a bench trial on the merits, judgment was rendered in favor of plaintiffs and against Dixie Lloyd's and HCIC. The judgment against Dixie Lloyds was limited to its policy limits. Plaintiffs were awarded statutory penalties and attorney's fees for HCIC's arbitrary and capricious handling of the claim.
Judgment was also rendered in favor of the intervenor, thus allowing the intervenor to recover from the UM insurer for the maintenance and cure benefits paid to Champagne. From this judgment HCIC appeals alleging as error quantum and the award of statutory penalties and attorney's fees. Plaintiffs answered the appeal and seek an increase in damages for loss of future earnings and earning capacity and for future pain and suffering. Plaintiffs further allege as error the trial court's *755 award to intervenor, and against HCIC, for reimbursement of sums paid by intervenor to Champagne. Plaintiffs also seeks an award of damages for frivolous appeal and an award of damages pursuant to La.R.S. 22:1220.[1]

QUANTUM

a) Pain and Suffering
The trial court awarded $250,000 for past and $250,000 for future pain and suffering. HCIC contends this award is so high as to constitute an abuse of the trial court's discretion. Champagne contends that the $250,000 awarded for future pain and suffering is so low as to constitute an abuse of discretion.
Champagne suffered numerous injuries as a result of the accident:
1) comminuted (shattered) and displaced fracture of the right acetabulum (socket portion of hip joint)
2) comminuted fracture of the right patella (knee cap)
3) non-displaced fracture of the first rib on the right side
4) pulmonary contusion and atelectasis of the lung
5) non-displaced fracture in lateral aspect of talus (ankle bone) with small evulsion chip in region
6) Several extensive lacerations of upper and lateral surface of lip (avulsion laceration)
7) right patella tendon fracture and rupture
8) questionable fracture of right nasal bone
Champagne underwent several surgical procedures for his injuries as enumerated below:
1) surgical repair of the avulsion/laceration of the upper and lateral lip;
2) examination under anesthesia; debridement of the compound patellar fracture; attempted but unsuccessful open reduction internal fixation with major distal fragments wired to the proximal fragment; excision of patellar mechanism (by use of surgical wire);
3) open reduction and internal fixation (with metal screws) of right acetabular fracture; wound inspection and application of long leg cast.
4) Cast change (requiring anesthesia);
5) manipulation of knee and removal of wire (under anesthesia).
The injury occurred on January 16, 1990. Champagne was hospitalized from that date to February 2, 1990. On the date of his discharge, at a different hospital, Champagne's wife delivered their first child by Cesarean Section. Champagne was in such pain that he was not able to accompany his wife to the hospital nor was he able to remain at the hospital through the delivery. He was only able to visit with her at the hospital three days after the baby's birth. He was unable to assist her and the baby after their arrival home. Champagne was confined to a wheelchair for three weeks after his hospitalization. He then had to use crutches for eight weeks and for four weeks thereafter he was able to walk only with the aid of a cane.
He stated that he remained in severe pain and had frequent nightmares for approximately six months following the accident. At the time of trial he still limped; could not run; and was no longer able to participate in sports such as football, basketball, bowling, softball, water skiing and camping; his marital relationship had been adversely affected by the accident leading to four marital separations of varying duration. At the time of trial his pain had subsided, however, the pain returned after walking any distance; after taking large steps; or after standing or sitting for any great length of time.
Dr. Gary Guidry was accepted by the court as an expert in orthopedic medicine and was Champagne's treating physician. *756 Prior to trial Dr. Guidry examined Champagne's knee and noted good range of motion and lessening symptoms of pain. In Dr. Guidry's opinion: the knee condition had progressed satisfactorily considering the extent of the injury, however, early degenerative changes were present in the hip area, i.e. flattening of the femoral head and narrowing of the hip joint. Thus in Dr. Guidry's opinion Champagne will most likely suffer from post traumatic arthritis which will, within three to five years, require total hip replacement surgery to alleviate the pain; and based on Champagne's age (27 years) he will most probably have to undergo additional hip replacement procedures every ten years for the remainder of his life. Dr. Guidry assigned a 15% to 20% permanent disability to the hip; a 15% disability to the knee; a 30% to 35% total disability of the lower extremity; and a 20% to 25% disability of the body. At the time of trial Champagne was taking antiinflammatory medication; was undergoing physical therapy; and had not yet been discharged from Dr. Guidry's care.
An award of general damages is determined by the facts and circumstances of each particular case and should not be disturbed absent a clear abuse of the trial court's discretion in making the award. Day v. South Line Equipment Co., 551 So.2d 774 (La.App. 1st Cir.), writ denied, 553 So.2d 474 (La.1989). After a careful review of the record and in light of the facts and circumstances discussed above we find no abuse of the trial court's discretion in awarding $250,000 for past and $250,000 for future pain and suffering.
b) Loss of Future Earning Capacity
Champagne was awarded the sum of $175,000 for loss of future earning capacity. On appeal Champagne contends that this award should be increased to $333,487.94.
Champagne was approximately twenty-seven years old at the time of trial, had less than an eleventh grade education and his work-life expectancy was 29.6 additional years. Prior to commencing employment with Trico Marine, Champagne's work history was very sporadic and was limited to manual labor. The most income earned by Champagne in any year prior to the accident was $8,429.02. Around the time of his initial employment at Trico Marine, Champagne attempted but failed to pass the GED examination. He was initially employed by Trico Marine as a deckhand, then was promoted to crew boat engineer, the position he occupied at the time of the accident. He was earning $60.00 per day at the time of the accident.
Damages assessed for loss of earning capacity need not be based on the individual's average salary over the years prior to the accident. See Snyder v. Taylor, 523 So.2d 1348 (La.App.2d Cir.), writ denied, 531 So.2d 267, 268 (La.1988). Champagne's average salary was decidedly lower than Champagne's income as a crew boat engineer.
The evidence clearly indicates that Champagne is permanently restricted from offshore work. Given his lack of education and limited work skills, Champagne is most likely employable in fields involving light or medium labor or sedentary work with entry level pay of from minimum wage to $6.00 per hour. Champagne stated that his goal was to eventually become a supply boat or crew boat captain. These positions pay between $90-$115 per day and $135-$160 per day respectively. Although Champagne's goal was to become a boat captain thereby earning income greater than $60.00 per day the realization of such goals is speculative given the fact that he was previously unable to pass the GED and that he may not have successfully completed the schooling and testing required to become eligible for employment as a crewboat or supply boat captain.
Because loss of future earnings or earning capacity cannot be calculated with mathematical certainty, the trial court has great discretion in determining the amount of damages assessed. The reviewing court may not substitute its judgment for that of the trial court absent a clear abuse of discretion. See Wallace v. Slidell Memorial Hospital, 509 So.2d 69 (La.App. 1st Cir. *757 1987). After careful review of the record, we find no abuse of discretion in the trial court's award.

STATUTORY PENALTIES AND ATTORNEY FEES
In this assignment of error HCIC contends that the trial court erred in assessing statutory penalties and attorney's fees based on the trial court's determination that HCIC was arbitrary and capricious in its handling of the claim.
The injury occurred on January 16, 1990. On approximately May 21, 1990, HCIC tendered the sum of $20,000 which it asserted to be the UM policy limits. That tender was refused by Champagne. The consent judgment executed by plaintiffs and HCIC in June, 1990, provided that June 11, 1990, commenced the time period during which a McDill tender should be made. By letter dated July 10, 1990 from defense counsel to HCIC, defense counsel evaluated the judgment value of the claim in the $245,000 to $395,000 range (exclusive of medical expenses).
HCIC was aware by July 10, 1990, that Champagne's medical expenses at that time were approximately $50,000; it was aware of the extent of Champagne's injuries; and was aware that Champagne was permanently restricted from working offshore and from jobs requiring any repetitive climbing, stooping or prolonged standing. Defense counsel recommended that HCIC make a $75,000 tender. Such a tender was made to plaintiffs on July 12, 1990, by a check which was payable jointly to the intervenor and to plaintiffs. Plaintiffs refused the tender on the grounds that the amount tendered was too low and that the tender was not unconditional because the check was payable jointly to the intervenor and to plaintiffs. Plaintiffs objected to the intervenor's being reimbursed from any party other than Duplantis, the tortfeasor, and his liability insurer.
On December 21, 1990, HCIC tendered the sum of $100,000 payable to plaintiffs and plaintiffs' counsel. The additional sum of $50,000 was withheld for payment to intervenor.
In oral reasons for judgment the trial court stated that the quick trial and disposition of the case did not justify HCIC's unrealistic view of the claim's value; HCIC could not cure its arbitrary and capricious treatment of this case by making a last minute tender (December 21, 1990) immediately prior to trial; and that HCIC should have made a substantial tender by July, 1990.
In order to prevail under La.R.S. 22:658, the UM claimant must establish that the insurer received satisfactory proof of loss; that it failed to pay the claim within the statutory period of the date of its receipt of such proof of loss and that its failure to timely tender a reasonable amount of damages was arbitrary and capricious. Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991). The determination that an insurer's handling of a claim is arbitrary and capricious is one of fact which should not be disturbed unless manifestly erroneous. Marcel v. Allstate Insurance Co., 536 So.2d 632 (La.App. 1st Cir.1988), writ denied, 539 So.2d 631 (La. 1989). After careful review of the record we find no manifest error in the trial court's determination that HCIC's handling of the claim was arbitrary and capricious and the assessment of penalties and attorney's fees as a result thereof.

DAMAGES AND PENALTIES PURSUANT TO LA.R.S. 22:1220
Plaintiff's contend that the trial court erred in failing to award penalties under La.R.S. 22:1220.
La.R.S. 22:1220 provides in pertinent part:
Sec. 1220. Good faith duty; claims settlement practices; cause of action; penalties
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable *758 effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
This statute became effective July 6, 1990. The injury occurred in January, 1990, and trial was held in January, 1991.
Plaintiffs contend that damages and penalties should be awarded because of HCIC's alleged misrepresentation to Champagne that the UM policy limit was $20,000, rather than one million dollars which was eventually determined to be the correct amount. After HCIC's alleged misrepresentation, a consent judgment was executed by HCIC and plaintiffs in which HCIC acknowledged the million dollar UM policy limits. The consent judgment was executed on June 11, 1990, which was prior to July 6, 1990, the effective date of La. R.S. 22:1220. Thus, that statute is not applicable to the alleged misrepresentation because the statute made a substantive change in law, and thus is not applied retroactively. Francis v. Travelers Insurance Co., 581 So.2d 1036 (La.App. 1st Cir.), writs denied, 588 So.2d 1114, 1121 (La. 1991).
An insurer who breaches its duty of good faith and fair dealing by failing to pay the amount of any claim due within sixty days of its receipt of satisfactory proof of loss when its failure is arbitrary and capricious or without probable cause is liable for damages sustained as a result of the breach. La.R.S. 22:1220(A) and (B)(5). The trial court found that HCIC had receipt of satisfactory proof of loss and should have tendered the amount due by July, 1990. By July 10, 1990, HCIC was aware of the extent of Champagne's injuries and the damages sustained. HCIC's arbitrary and capricious failure to pay or to tender payment to plaintiffs continued from July, 1990 to the date of the trial. Thus from July 6, 1990 (the effective date of the statute) to the time of trial La.R.S. 22:1220 is applicable to HCIC's arbitrary and capricious failure to pay.
In order for an insurer to be liable for damages under La.R.S. 22:1220(A) the insured or claimant must prove that he sustained damages as a result of the insurer's breach. The claimant or insured is then entitled to recover any general and special damages incurred by the insurer's breach. In addition to recovering general and special damages the claimant may recover a penalty of up to a maximum of two times the damages. Unlike the penalty provision of La.R.S. 22:658, the penalty provision of La.R.S. 22:1220(C) is applicable only after a showing of damages actually suffered as a result of the breach.
In the case before us, plaintiffs failed to prove damages sustained as a result of HCIC's arbitrary and capricious failure to *759 pay the amount of the claim due. Accordingly, plaintiffs are not entitled to damages or penalties pursuant to La.R.S. 22:1220.

INTERVENTION
Plaintiffs contend that the trial court's award to intervenor of the sum of $59,936.01 in reimbursement of the amount paid by intervenor to Champagne for maintenance and cure is erroneous. They allege that intervenor may only seek reimbursement for maintenance and cure from the tortfeasor, not from the UM carrier. The cases cited by plaintiffs in support of this proposition, Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982) and Morel v. Sabine Towing & Transportation Co., Inc., 669 F.2d 345 (5th Cir.1982), are not applicable to the case before us and do not address the issue of the recovery of maintenance and cure paid by the insurer or employer from a UM carrier. These cases dealt with the distinction between maintenance and earned wages wherein it was held that wages could not be credited against the vessel owner's maintenance obligation.
In Leveque v. Holloway's Propellers, Inc., 540 So.2d 396 (La.App. 1st Cir.1989) this court held that the employer and its insurer have the right of reimbursement from a third party tortfeasor for the maintenance and cure paid to an injured seaman. The concept of maintenance and cure is based on a seaman's maritime employment contract. In situations where a seaman is injured by a third-party tortfeasor the employer may not withhold the maintenance benefits in the expectation that the seaman will eventually recover such benefits from the tortfeasor. The impetus on the employer to promptly pay the benefits in such a situation is that the employer may be eventually reimbursed for such payments. See Hebert v. Aetna Casualty and Surety Co., 400 So.2d 695 (La.App. 1st Cir.1981).
The object of the uninsured/underinsured motorist statute is to "promote full recovery of damages by innocent automobile accident victims by making uninsured [underinsured] motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured." Johnson v. Fireman's Fund Insurance Co., 425 So.2d 224, 226 (La.1982). The primary motive underlying both the UM statute and the maintenance and cure is the protection of the injured person. Id. at 226; Hebert, 400 So.2d at 698-699. The employer's (or insurer's) reimbursement for sums expended in maintenance and cure would be severely limited if the employer were allowed to recover only from the tortfeasor and not from a UM insurer from whom the injured person (seaman) is entitled to obtain full recovery for all damages sustained. Accordingly, we hold that the trial court correctly awarded to intervenor the reimbursement for maintenance and cure which it has paid to Champagne.

FRIVOLOUS APPEAL
Plaintiffs request that we assess damages for a frivolous appeal based on HCIC's alleged insincerity in advocating its position and because this appeal was taken as a delaying tactic.
Damages for frivolous appeal may be awarded pursuant to La.C.C.P. art. 2164. This statute is penal in nature and should be strictly construed. Nungesser v. Nungesser, 558 So.2d 695 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990). In order to determine whether an appeal is frivolous the court should consider whether the appeal was taken solely for delay; whether the appeal raises serious legal questions; and whether counsel sincerely believes in the position he is advocating. Id. at 702.
Substantial damages and penalties were awarded in this case and HCIC's assignments of error on issues of quantum and statutory penalties clearly do not fall into any of the above mentioned categories. Thus, we reject plaintiffs demand for damages for frivolous appeal. Accordingly, the judgment of the trial court is affirmed. *760 Costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] We note that the Louisiana Insurance Code, Title 22 of the Louisiana Revised Statutes of 1950, was amended and reenacted in its entirety by Acts 1991, No. 1031. This revision does not take effect until January 1, 1993.