634 So.2d 1205 (1993)
Jo Ann C. BOSWORTH and Joseph O. Bosworth, Individually and on Behalf of the Estate of his Minor Child, Lindy C. Bosworth, and Leslie C. Bosworth, Individually,
v.
Norman AUTHEMENT, Tina LeBeouf, and State Farm Mutual Automobile Insurance Company.
No. CA 92 0610.
Court of Appeal of Louisiana, First Circuit.
October 21, 1993.
Rehearing Denied December 6, 1993.
*1206 Henry E. Yoes, III, Lake Charles, intervenor.
Steve M. Sikich and Earl G. Pitre, Lake Charles, for plaintiffs and appellants, Jo Ann and Joseph Bosworth.
Douglas J. Authement, Houma, for defendant and appellee, Norman Authement.
Jerry H. Schwab, Houma, for defendant and appellee, State Farm Mut. Auto. Ins. Co.
Ray A. Collins, Larose, for LeBeouf.
Lloyd T. Bourgeois, Labadieville, for LeBeouf and State Farm.
James Dagate, Mathieu & Dagate, Houma, for State Farm and Bosworth.
Before LOTTINGER, C.J., and WATKINS, SHORTESS, FOIL and FOGG, JJ.
FOIL, Judge.
This appeal raises issues of quantum arising out of a suit for personal injuries sustained in an automobile accident. Liability is not contested on appeal. The plaintiff, Jo Ann Bosworth, is permanently disabled due to "chronic pain syndrome" and was awarded $50,000.00 for general damages; $26,530.00 for future medical expenses; $10,660.16 for past medical expenses; $39,515.00 for past loss of income; and $85,000.00 for future loss of income. The trial court awarded Mr. Bosworth $7,500.00 for loss of consortium, but declined to make an award to the two children for loss of society. The plaintiffs claim *1207 on appeal, in nine assignments of error, that the trial court abused its discretion in awarding damages.
The trial court issued lengthy written reasons for judgment in this case. We are attaching a copy hereto. However, we amend the judgment appealed from in the following respect.

GENERAL DAMAGES
The trial court found that Mrs. Bosworth is permanently disabled due to "chronic pain syndrome." She is a former school teacher and mother of two children, who enjoyed good health prior to the accident. As a result of the pain syndrome, she can no longer teach and was forced into early retirement. The trial court awarded Mrs. Bosworth $50,000.00 for her pain and suffering. She claims on appeal that this award is grossly inadequate for the pain she will suffer for the remainder of her lifetime.
The judge or jury is afforded much discretion in the assessment of damages in tort cases. Before an appellate court can disturb a trial court's award, the record must clearly reveal that the trier of fact abused its discretion in making the award. If the appellate court finds from the record an abuse of discretion, the award may be disturbed only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded the trier of fact. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
We agree with the trial court's factual findings concerning the nature and severity of Mrs. Bosworth's physical condition. However, in light of these findings, we find that the trial court abused its discretion in awarding only $50,000.00 for past and future physical pain and suffering. We consider the lowest amount reasonably within the court's discretion to be $150,000.00, and we increase the general damages award accordingly.

PAST MEDICAL EXPENSES
Past medical expenses were stipulated to by the parties. The total was $18,470.98, less the sums already paid by State Farm. This came to $11,797.64. The trial court was in error in only awarding $10,660.16.

FUTURE LOSS OF INCOME
The trial court awarded $85,000.00 for future loss of income. The court accepted the opinions of treating physicians that plaintiff is permanently disabled from teaching and has therefore taken a disability retirement. However, the court also felt that the plaintiff could probably return to other work and at least earn the minimum wage and probably more with her educational background. Accordingly, the trial court subtracted a portion of her retirement income and a minimum wage factor in computing an award for future loss of income.
We feel that the trial court committed error when it subtracted a portion of the plaintiff's disability retirement income from the award of future loss of income. This circuit takes the position that such income is a "collateral source." See Swann v. City-Parish, 492 So.2d 1225 (La.App. 1st Cir. 1986).
Based on the evidence produced at trial, the appropriate amount for loss of future income should have been an amount discounted by a minimum wage factor, which totals $221,600.00.

INTERVENTION
Plaintiffs retained the services of the law firm Pitre, Yoes, Kay & Halley, which represented plaintiffs through the trial and filing of an appellate brief. In July, 1992, one of the firm's partners, Mr. Pitre, withdrew from the partnership. The firm continued under the name Yoes & Kay. In August, 1992, after plaintiffs' appeal was taken and the brief submitted, the firm received instructions from plaintiffs to transfer the file to the partner who withdrew. Yoes & Kay then filed a petition for intervention with this court seeking to protect its right to recover *1208 one-fourth of any amount collected by plaintiffs for services rendered pursuant to its agreement with plaintiffs.
We hereby order that the attorney's fees and cost reimbursements of plaintiffs' attorneys be placed in the registry of the trial court and held there, pending final determination by the trial court as to the amount due each attorney.

DECREE
For the above reasons, the judgment of the trial court is amended to increase the plaintiff's award for general damage to $150,000.00, to increase the award for past medical expenses to $11,797.64, and to increase the award for loss of future income to $221,600.00. In all other respects, the trial court's judgment is affirmed. Further, the case is remanded to the trial court for the proper apportionment of plaintiffs' attorney's fees. All costs of this appeal are assessed to Appellees.
AMENDED AND AFFIRMED; REMANDED.
FOGG, J., concurs in part, dissents in part and assigns reasons.
SHORTESS, J., concurs in part and dissents in part with reasons.

APPENDIX

Tina LeBeouf and Michael LeBeouf, Individually and on Behalf of the Estate of his Minor Children, Shawn LeBeouf, Angelle LeBeouf, Krystal LeBeouf and Tobi LeBeouf

vs.

NO. 95,743

Norman Authement, Jo Ann Bosworth and State Farm Mutual Automobile Insurance Company

No. 95,743

CONSOLIDATED WITH:

Jo Ann Bosworth and Joseph O. Bosworth, et al

vs.

NO. 96,209

Norman Authement, Tina LeBeouf, and State Farm Mutual Automobile Ins. Co.

No. 96,209

32ND JUDICIAL DISTRICT COURT

PARISH OF TERREBONNE

STATE OF LOUISIANA

REASONS FOR JUDGMENT
This is a personal injury case involving an accident between Jo Ann Bosworth and Norman Authement on May 22, 1989. Mr. Authement was proceeding down Aycock Street when he attempted to cross Bond Street. Traffic in the left and middle lanes of Bond Street had stopped when Mr. Authement entered the intersection. Unbeknownst to Mr. Authement, Mrs. Bosworth had just exited the Tunnel and was proceeding toward Barrow Street in the right-hand lane of Bond Street. When Mr. Authement entered her lane, Mrs. Bosworth, driving an Oldsmobile Delta, collided into the right front fender of his car, a Mercury Marquis. Upon impact, Mr. Authement then struck a third car driven by Tina LeBeouf.
Mrs. Bosworth and her family brought suit against Mr. Authement, Mrs. LeBeouf and State Farm Mutual Automobile Insurance Company, the liability insurer, for both Mr. Authement and Mrs. LeBeouf, as well as the uninsured motorist carrier for Mrs. Bosworth. This suit was consolidated with one brought by Mrs. LeBeouf against Mrs. Bosworth, Mr. Authement, and State Farm. Prior to trial, November 26, 1990, summary judgment was rendered in favor of both Mrs. Bosworth and Mrs. LeBeouf, finding neither was negligent, for the other's injuries. Also prior to trial, Mrs. LeBeouf settled her claim against Mr. Authement.

LIABILITY
Defendants (Mr. Authement and State Farm) claim that Mrs. Bosworth was negligent in not keeping a proper lookout nor reducing her speed to compensate for the heavy traffic conditions. Testimony at the trial indicated traffic was backed up from *1209 Barrow Street to just south of Aycock Street. Mrs. LeBeouf stated that Mrs. Bosworth appeared to be going fast. However, Mrs. Bosworth testified she was going below the 35 m.p.h. speed limit. Gregory Whitney, plaintiffs' accident reconstruction expert, testified by way of deposition that Mrs. Bosworth was travelling at less than 25 m.p.h. when her car collided with Mr. Authement's car. Based on the above findings, this Court declines to find any negligence on the part of Mrs. Bosworth.

DAMAGES
Mrs. Bosworth claims to be totally and permanently disabled due to "chronic pain syndrome," which, she says, was caused by the accident. Defendants contend that Mrs. Bosworth has failed to prove that her condition is permanent or that it is not the result of subsequent accidents.
Mrs. Bosworth was seen the day of the accident at Terrebonne General by her family physician, Dr. Bruce Guidry. She complained of pain in her neck area, whereupon Dr. Guidry recommended bed rest and ice packs. The following day, Dr. Guidry saw Mrs. Bosworth again. In addition to neck and shoulder pain, she told him the right side of her thoracic area hurt her and she was experiencing numbness in the left side of her face. He continued to see her on May 29, June 13, June 21, July 17, and August 9, 1989, at which point he referred her to Dr. Gary Guidry, an orthopedic surgeon.
Defendants argue that Mrs. Bosworth's injuries were not significant and that they were not caused by the accident at issue, but rather a subsequent accident. A CAT scan done in May of 1989 showed a 1 mm bulging disc at the C6-7 level. Dr. Bruce Guidry opined that he did not consider such a finding to be significant because a 1 mm bulge can be considered normal. Defendants point out that Mrs. Bosworth did not complain of her lower back hurting until the August 16, 1989 visit with Dr. Gary Guidry. (An August 30, 1989 CAT scan showed a 1 mm bulging disc at the L4-5 level.) Mrs. Bosworth attempted to respond by noting that she complained of pain in the right side of her thoracic area when she saw Dr. Bruce Guidry May 23, 1989. This argument must fail inasmuch as the thoracic area is not the lower back. Defendants also point to the testimony of Dr. Delmar Walker, who examined Mrs. Bosworth at the request of defendant. Dr. Walker testified that if Mrs. Bosworth had received an injury to the L4 disc on May 22, 1989, she would have been in "substantial" pain within a "matter of hours from the date of the accident. Dr. Walker stated he was basing his testimony on the March 1990 myelogram that showed a bulging disc at the L4 level. However, he later explained he was referring to a "ruptured disc, or to a disc allowed to "protrude beyond its normal bounds."
It is well settled that the opinion of the treating physician is accorded greater weight than that of a physician who examines the plaintiff only one time. While this Court takes note of Dr. Guidry's findings, it also notes that Dr. Guidry is not an orthopedist nor did he continue to treat her after she developed a full-blown chronic pain syndromethe injury on which her claim is based.
Defendants also contend that two subsequent accidentsa March 9, 1990 automobile accident in which her car was struck on the driver's side, and a June, 1990 bicycle accidenthad aggravated her condition. This argument must fail insofar as Dr. Donald Judice testified that when he saw Mrs. Bosworth March 18, 1990, he determined that she had already developed a "full-blown" pain syndrome, a condition which takes "months" to develop. Furthermore, Dr. Judice testified that the absence of "multiple bulges" on the MRI done by Dr. Gary Guidry on August 30, 1989 indicates her injuries were trauma-induced and not the results of a natural degenerative process (except for the congenital cleft involving the posterior T1 vertebral body, which pre-dated the accident).
Although defendants place much emphasis on Dr. Gary Guidry's testimony regarding the subsequent accidents, Dr. Guidry merely stated that the March, 1990 accident "could *1210 have aggravated" her neck or back condition. Contrary to what defendants contend, Mrs. Bosworth's condition had not improved that dramatically prior to the second accident. In fact, Dr. Guidry, stated that she was "having good and bad days overall," "still having some headaches, neck pain," and finally, in January of 1990, she indicated, "her neck was doing fairly well," but that her back pain "had gotten worse."
Defendants, in disputing the permanence of Mrs. Bosworth's injuries, cite Dr. Judice's testimony wherein he states that he cannot estimate how long she will continue to need medication. Dr. Judice had also acknowledged he stated in a deposition that it's a "mere possibility" that she would have pain the rest of her life. However, Dr. Judice also testified that her pain syndrome would "last indefinitely," for the "rest of her life," it would not "end any time soon," and that she will "continue to need medication the rest of her life."
As to defendants' claim that Mrs. Bosworth could have mitigated her damages by attending a pain clinic, the nature of her condition and the role of a pain clinic must be examined. Dr. Judice explained that a pain syndrome results from damages to one of the three nervous systemsone that is not voluntarily controlled by the patient. Its role is to protect the other nervous systems. But when it's hurt it becomes overly sensitive to certain stimuli so that eventually any stimulus to a particular area of the body will be perceived by the damages nervous system as pain.
A pain clinic is designed to help people with such problems by teaching them how to manage the problem. It does not, however, eliminate the source of the pain.
While it is true that Dr. Judice recommended a pain center, Mrs. Bosworth could not "consider it because of other problems." More specifically, her husband had received a job promotion requiring him to be out of town three weeks out of the month and that no one would be able to care for their 13-year old daughter during the six weeks Mrs. Bosworth would be attending the pain clinic. She also could not afford the $20,000.00 it would cost.
Having cited the above findings, this Court finds that Mrs. Bosworth has borne her burden of proving her injuries were caused by the May 22, 1989 accident and are permanent in nature. Accordingly, this Court must now reach the issue of damages for pain and suffering.
At the time of the accident, Mrs. Bosworth was 44, married and the mother of two daughters, ages 20 and 12. She was a school teacher with a master's degree and some hours toward a doctorate. Now, due to the pain syndrome, she is prevented from teaching and has been forced to take an early retirement. Her family life has changed; they no longer take vacations together. Just driving around town is painful for her, she testified. Dr. Bruce Guidry stated that Mrs. Bosworth had good health prior to the accident. Dr. Judice testified that in contrast to the "steady" person he knew before the accident, Mrs. Bosworth is now a very distraught individual who cries often.
Dr. Marsha Redden, a psychologist who also treated Mrs. Bosworth, testified that Mrs. Bosworth was found to have a valid (honest) profile on the MMPI, a personality test. Dr. Redden said that Mrs. Bosworth told her her whole life had changedshe can't work, her family life has changed, and she "can't do for her younger child" as she would like. She also told Dr. Redden that her sexual interest had diminished considerably, and that pain has interfered with every aspect of her life. Dr. Redden opined that Mrs. Bosworth has a great deal of anger and guilt, and is suffering from a clinical depression. Mrs. Bosworth's husband, Joseph Bosworth, also testified, and said that his wife worked very hard at home and at school before the accident. Now, she is unable to even pick up a pot of water from the stove.
Accordingly, this Court finds that Mrs. Bosworth is entitled to $50,000.00 for general damages.

*1211 MEDICALS
Dr. Judice testified that the pain syndrome would last the remainder of Mrs. Bosworth's life and that her need for medication would depend upon the success of the pain clinic. Therefore, if the pain clinic treatment is successful, and there is optimism in that regard, the medication necessary would be minimal. Treatment at the pain clinic has been estimated to cost approximately $20,000.00.
Dr. Judice concurred in the treatment of Mrs. Bosworth by her psychologist, Dr. Marsha Redden. Dr. Redden's treatments are estimated at approximately $3,530.00.
Dr. Judice further was of the opinion that Mrs. Bosworth would require some annual follow up care by a physician at approximately $50.00 per visit.
There were several other items which the plaintiffs submitted to the court as anticipated medical expenses. However, in the event the treatment by the pain clinic produces the expected satisfactory results the additional items would in this Court's opinion be unnecessary.
As to past medical expenses the evidence shows the sum of $17,352.98 to have been expended. Of this sum the defendants have already paid the sum of $6,692.82 leaving a net loss of $10,660.16.
Based on the aforementioned items of anticipated medical expenses the court would award the sum of $26,530.00 as future medical expenses.

LOST WAGES
Based on the opinions of the treating physicians, Mrs. Bosworth is permanently disabled from teaching and has therefore taken a disability retirement. These opinions are accepted by the Court as valid. The Court is not satisfied, however, that improvements in her condition (after medical assistance from a pain clinic or similar facility) would not allow Mrs. Bosworth to at least earn the minimum wage and probably more with her educational background.
The evidence presented satisfies this Court that Mrs. Bosworth has suffered a past loss of income in the amount of $39,515.00 to date of trial. As far as future wages are concerned the economist who testified gives Mrs. Bosworth a worklife at the time of trial of additional twelve (12) years. The facts are that Mrs. Bosworth has taken a disability retirement from the school system that pays her 60% of her average wage over the last three year period she worked. The Court recognizes that some of the retirement money she receives was actually paid in by Mrs. Bosworth over her 24 year tenure in the school system. The Court has approximated the amount paid in by the plaintiff and subtracted this sum from the present amount she receives in retirement. The remainder of the retirement the Court fees should be deducted from the amount of future economic loss to be sustained by the plaintiff. Further it is the opinion of this Court from the evidence presented that Mrs. Bosworth with her extensive education should have no trouble earning at least minimum wage. This too the Court would deduct from the amount of future economic loss. This establishes a net annual loss to Mrs. Bosworth over her remaining twelve years of worklife. The net loss has been projected over the worklife period and discounted to present value at what the Court feels is a reasonable rate of interest over that period. The result of these calculations produce a net future loss discounted to present value of $85,000.00.

LOSS OF CONSORTIUM
Several witnesses testified regarding the claim of Mr. Bosworth for his loss of consortium. Suffice it to say that their marriage life has been significantly altered because of Mrs. Bosworth's condition. Their intimate life together has been curtailed and strained to say the very least. The many household services Mrs. Bosworth performed as a homemaker have, for the present, have been lost to Mr. Bosworth. The Court would award the sum of $7,500.00 to Mr. Bosworth for his loss of consortium.
The Court finds the evidence insufficient to make an award for loss of society to the two Bosworth children, Lindy and Leslie.
Judgment will be rendered accordingly.
*1212 Signed, Houma, Louisiana, this 13th day of July, 1991.
 /s/ Paul R. Wimbish
 PAUL R. WIMBISH
 DISTRICT JUDGE
 DIVISION "E"
FOGG, Judge, dissenting.
I respectfully disagree with the majority's disposition of the claims for loss of consortium brought by Mr. Bosworth and his two daughters. In its written reasons for judgment, the trial court states that due to the pain syndrome, Mrs. Bosworth has been forced into early retirement; her family life has changed; and her family no longer takes vacations together. The court noted that Mrs. Bosworth advised her psychologist that she "can't do for her younger child" and that the pain has interfered with every aspect of her life. The court also noted that Mr. Bosworth testified that since the accident his wife's activities at home are greatly reduced. The trial found that Mr. and Mrs. Bosworth's marriage had been significantly altered by Mrs. Bosworth's condition and that their intimate life had been "curtailed and strained to say the very least." Yet the trial court found the evidence insufficient to support an award of loss of consortium for the two daughters and awarded Mr. Bosworth only $7,500. In this respect, I feel the trial court manifestly erred. I would increase the award to Mr. Bosworth and award damages to Lindy and Leslie Bosworth on this issue.
SHORTESS, Judge, concurring in part and dissenting in part.
I agree with Judge Fogg's dissent and would increase the loss of consortium award to Joseph O. Bosworth and would award loss of consortium to both daughters, Leslie C. and Lindy C. Bosworth. I further dissent from the award of general damages to Jo Ann C. Bosworth. When a reviewing court finds an abuse of the trial court's great or vast discretion, we may only raise the award to the lowest reasonable award. Coco v. Winston, 341 So.2d 332 (La.1977). In my opinion, $100,000.00 should be the general damages award.
I respectfully concur in part and dissent in part.