657 So.2d 672 (1995)
Maher KHALED, Taufig A. Khaled, and Munira Khaled
v.
Stephen H. WINDHAM, Michael T. Windham and State Farm Mutual Automobile Insurance Company.
No. 94 CA 2171.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*675 Locke Meredith, Baton Rouge, for plaintiffs/appellants Maher Khaled, et al.
Ron S. Macaluso, Hammond, for defendant/appellee State Farm Auto. Ins. Co.
Before LeBLANC, PITCHER and FITZSIMMONS, JJ.
LeBLANC, Judge.
This personal injury suit arises from a vehicular accident. Plaintiffs appeal a jury verdict finding one plaintiff ten percent at fault, assessing total damages at $90,502.00, and refusing to award damages for loss of consortium, exemplary damages, statutory penalties or attorney's fees. Defendant answered the appeal, arguing the percentage of comparative fault should be increased and the damages reduced. We affirm in part, reverse in part, and amend in part.

FACTUAL BACKGROUND
On the evening of May 13, 1989, plaintiff, Maher Khaled, attended a party given by a classmate. He testified that he drank one-half a beer at the party. Michael Windham, who was also present, admitted at trial that he drank several beers at the party, but did not know the number. At some point, Michael left the party and went to a local bar. A couple hours later, he returned to the party with Tonya Hughes and Michelle New. When Michael left the party about an hour later to bring Tonya and Michelle home, Maher asked to accompany them. Michael drove a vehicle owned by his parents, with Tonya riding in the front passenger seat and Maher and Michelle riding in the back seat.
The group brought Michelle home without incident. According to Tonya's testimony, as they were on their way to her house, a car began tailgating them and shining its bright lights. Tonya testified that they were aggravated, and she and Michael discussed letting the car pass then trying to catch it so that they could retaliate by "bright lighting" it. She stated Maher was aware of their plan, although she could not remember whether he participated in the discussion. In any event, after pulling over to let the other car pass, Michael began chasing it. While attempting to catch up with the car, Michael approached a curve going 75 m.p.h. Tonya and Maher both urged Michael to slow down. Michael was unable to negotiate the curve and the vehicle slid off the road, flipping over into a ditch.
The results of a blood alcohol test taken a few hours after the accident established Michael's alcohol level at 0.10. He ultimately pled guilty to a charge of failure to maintain control and was convicted of a DWI.
Subsequently, Maher and his parents filed suit against Michael Windham, Stephen H. Windham (Michael's father), and their liability insurer, State Farm Mutual Automobile Insurance Company. State Farm was also plaintiffs' UM insurer and was named in a supplemental petition in that capacity. On July 30, 1991, plaintiffs released all claims against Michael and Stephen Windham in exchange for payment of the $25,000.00 limits of the State Farm liability policy. Plaintiffs also received $5,000.00 in medical payments coverage under the liability policy, the maximum provided by the policy. Plaintiffs reserved their claims against State Farm under their UM policy, which had policy limits of $100,000.00.
Prior to trial, State Farm unconditionally tendered $75,000.00 to plaintiffs under the UM policy. Additional medical bills in the amount of $3,580.05 were also paid by State *676 Farm under the medical payment provision of plaintiffs' UM policy.
Following trial, the jury returned special interrogatories finding Michael Windham ninety percent negligent and Maher Khaled ten percent negligent in causing the accident in question. The jury rejected plaintiffs' claims for punitive damages, penalties and attorney's fees. Maher's damages were assessed at a total of $90,502.00, consisting of the following awards:

A. Physical Pain and Suffering $11,786
B. Mental and Emotional Anguish
 and Distress, Aggravation
 and Inconvenience $11,786
C. Physical Disability and Physical
 Limitations $11,786
D. Physical Disfigurement $11,786
E. Loss of Enjoyment of Life $11,786
F. Past Lost Wages $11,786
G. Past Medical Expenses $ 8,000
H. Future Medical Expenses $11,786

The jury found Maher's parents had not suffered any loss of consortium.
In view of the fact that the $100,000.00 tender paid by State Farm to plaintiffs ($25,000.00 under the liability policy and $75,000.00 under the UM policy) exceeded the damages assessed by the jury, the trial court rendered judgment dismissing plaintiffs' claims. Plaintiffs filed a motion for JNOV or, alternatively, a motion for new trial. Before ruling on this motion, the trial judge was elected to this Court. The motion for new trial was considered and granted by another judge, but was subsequently vacated and denied by a successor judge. Thereafter, plaintiffs appealed the judgment on the merits, and State Farm answered the appeal.

ISSUES
The issues raised by plaintiffs are:
1. Whether the jury erred in assigning ten percent fault to Maher Khaled?
2. Whether the jury awarded adequate damages?
3. Whether the jury erred in failing to award penalties and attorney's fees pursuant to La.R.S. 22:658 and La.R.S. 22:1220 for State Farm's failure to timely tender a reasonable amount to plaintiffs?
4. Whether the jury erred in failing to award exemplary damages under La. C.C. art. 2315.4 on the basis of Michael Windham's intoxication?
In its answer to plaintiffs' appeal, State Farm contends the assessment of fault against Maher Khaled should be increased and the damages assessed by the jury reduced.

COMPARATIVE FAULT
On appeal, plaintiffs argue the jury erred in assessing Maher with any comparative negligence, while defendant contends a greater percentage of fault should be assigned to Maher.
It is well-settled that the action of a guest passenger in voluntarily riding with a driver he knew or should have known was intoxicated may form the basis for an assessment of comparative fault, if the guest passenger is injured in an accident in which the driver's alcohol-induced impairment is a substantial cause. The plaintiff's appreciation of the danger is among the factors to be considered in assessing fault. Molbert v. Toepfer, 550 So.2d 183, 186 (La.1989). Comparative negligence is determined by the reasonableness of the party's behavior under the circumstances. The factfinders' allocation of comparative negligence is a factual matter which will not be disturbed on appeal unless it is manifestly erroneous. Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694, 699 (La.App. 1st Cir.1993).
Plaintiffs argue there was no basis to assess Maher with ten percent fault because, although Michael was ultimately convicted of a DWI, at the time Maher asked to ride with him, Michael was not exhibiting any signs of intoxication. At trial, there was testimony to this effect by Michael, Tonya, and Maher. Further, Maher denied seeing Michael drink any alcohol at the party. However, evidence was presented that Michael drank his last beer shortly before the group left the party, when there were few guests remaining, although Maher denied being in the same room as Michael at that time. Further, State Trooper M.D. Erwin testified that when he spoke to Maher at the accident scene, Maher *677 stated "they" had been drinking. Trooper Erwin also testified he smelled a "kind of strong" odor of alcohol on Michael as he was being put into the ambulance. Additionally, Michael's father, Stephen Windham, may also have smelled alcohol when he saw Michael at the hospital, which was several hours after the group left the party. At trial Mr. Windham stated he did not recall whether he smelled alcohol on Michael, although he did not dispute that he had testified in his pretrial deposition that he had smelled alcohol. The jury also heard testimony from Tonya indicating Maher may have been aware of the plan to chase the other vehicle and "bright light" it, and failed to object.
Although Maher denied seeing Michael drink at the party, seeing any signs of intoxication, or being aware of the plan to retaliate, credibility determinations and the weighing of evidence are matters peculiarly within the province of the trier of fact. The issue to be resolved by an appellate court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. If the factfinder's conclusions are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even if convinced that had it been the trier of fact, it would have weighed the evidence differently. Stobart v. State Through DOTD, 617 So.2d 880, 882-83 (La.1993). After reviewing the record in its entirety, we find no manifest error in the assessment of ten percent fault to Maher.

DAMAGES
Plaintiffs allege inadequate damages were awarded because the jury did not properly consider each category of damages enumerated on the jury interrogatories. Plaintiffs point to the fact that, with the exception of the $8,000.00 award for past medical expenses, the jury assessed $11,786.00 for each of the other seven items of damages awarded to Maher. Plaintiffs contend the jury obviously "took a figure and divided it by the various categories of damages", and argue such a deliberation is clearly contrary to law.
Specifically, plaintiffs complain inadequate damages were awarded for general damages, past medical expenses, and past lost wages. They also allege the jury erred in not making any award to Maher's parents for loss of consortium. In its answer, State Farm contends the jury erred in awarding damages for future medical expenses.

General Damages
Our review indicates the total amount awarded for all items of general damages is so low as to constitute a clear abuse of the jury's discretion regardless of how the jury reached the amount. Therefore, we express no opinion regarding plaintiffs' argument as to the method by which the jury assessed damages. The jury awarded Maher a total of $58,930.00 in general damages, consisting of $11,786.00 for each of the following items of damages: physical pain and suffering; mental anguish; physical disability; disfigurement; and, loss of enjoyment of life. Despite the trier of fact's vast discretion in awarding general damages, we find the award made for Maher's physical pain and suffering, as well as the total of the general damages awarded, was below the lowest amount that a trier of fact could have reasonably awarded. Accordingly, the judgment must be amended to raise the award for general damages to the lowest amount reasonably within the jury's discretion. Bosworth v. Authement, 634 So.2d 1205, 1207 (La.App. 1st Cir.1993), reversed in part on other grounds, 94-0002 (La. 3/11/94), 634 So.2d 836.
Although they were generally classified as mild and surgery was not recommended, the medical evidence established Maher suffered at least two disc injuries as a result of the accident in question, at L4/5 and T8/9, respectively. One of Maher's doctors, Dr. Stuart Phillips, an orthopedic surgeon, felt that Maher also suffered from disc protrusions at T6/7 and T9/10. Dr. Phillips stated Maher could perform light work only, with restrictions as to lifting, bending, and prolonged standing or sitting. He gave Maher a permanent disability rating of twenty percent of the lumbar spine and ten percent of the body as a whole.
*678 Maher also sustained numerous abrasions and lacerations on his back from the broken glass of the vehicle's rear windshield. Dr. Edward Chaisson, a general surgeon who saw Maher on the day of the accident, stated that most of the lacerations were superficial, although some did require sutures. Dr. Chaisson indicated that numerous glass fragments were embedded in Maher's back, and continued to rise to the surface of the skin for some time after the accident. Maher's back is permanently scarred as a result of these injuries. He testified that the scars are uncomfortable and often itch, as well as causing him embarrassment.
After undergoing a myelogram ordered by Dr. Robert Hackey, one of his treating physicians, Maher developed post-myelogram syndrome. Dr. Hackey explained that this condition, in which the patient suffers headaches following a myelogram, can sometimes be severe. He prescribed bed rest for Maher. Maher testified that his headaches were so severe that he remained in bed for approximately a week and a half, and had to cancel a scheduled trip.
At trial, Maher testified he continues to suffer pain in his lower back and left leg, which sometimes becomes so bad that he wears a back brace to alleviate the pain. Maher testified he was active in sports prior to his injury, but can no longer participate in them.
Given the circumstances, we believe the lowest total amount which could be awarded for Maher's general damages was $75,000.00. Thus, the judgment of the trial court is amended to raise the total award for all items of general damages from $58,930.00 to $75,000.00.

Past Medical Expenses
A plaintiff ordinarily may recover reasonable medical expenses incurred as a result of his injury. Daigle v. United States Fidelity and Guaranty Insurance Company, 94-0304, p. 13 (La.App. 1st Cir. 5/5/95), 655 So.2d 431. In this case, medical bills totaling $8,409.44 were introduced into evidence, however, the jury awarded plaintiffs only $8,000.00. No basis exists in the record for the jury's refusal to award the full amount of medical expenses incurred. Accordingly, the judgment of the trial court is amended to increase the award for past medical expenses from $8,000.00 to $8,409.44.

Past Loss Wages
Plaintiffs allege the jury erred in awarding only a portion of Maher's lost wages. At trial, Maher claimed $21,100.00 in lost wages, however, the jury awarded him only $11,786.00.
Maher, who was a high school graduating senior at the time of the accident, was employed by his father in the family grocery store. He testified he was paid $350.00 per week by his father. Mr. Khaled testified he paid Maher this amount, which was more than he sometimes paid to himself or his wife, so that Maher would be able to purchase a car. Plaintiffs' accountant calculated Maher's lost wages at $21,100.00. This calculation was based solely on figures supplied to the accountant by the Khaleds, since Maher was paid primarily in cash.
The jury apparently did not accept the evidence presented by plaintiffs regarding this claim. We find no error in this determination since a reasonable person could have concluded the testimony that Maher was being paid $350.00 per week was implausible under the circumstances.

Loss of Consortium
Plaintiffs do not cite any evidence in support of their claim that Maher's parent should be awarded damages for loss of consortium. Maher's mother did not testify at trial. Although his father testified that Maher's injuries have affected Maher's personality and that he now fights with Maher more often, we find no error in the jury's refusal to award damages for loss of consortium. The record as a whole does not indicate that Maher's relationship with his parents was so affected as to require an award for loss of consortium. The jury's finding was not clearly wrong.

Future Medical Expenses
In its answer to plaintiffs' appeal, defendant contends the jury's award for future *679 medical expenses was erroneous. We agree. In order to recover future medical expenses, the record must establish that future medical expenses will be necessary. An award for future medical expenses will not be supported in the absence of medical testimony that they are indicated. Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 908, writ denied, 94-0806 (La. 5/6/94), 637 So.2d 1056. The record herein contains no such evidence. None of Maher's physicians advised surgery as of the time of trial. Nor did they indicate there would be a probable need for surgery in the future, although it was conceded to a possibility, as in all cases of disc injury. The award of future medical expenses in this case was entirely speculative. Therefore, the judgment of the trial court is hereby amended to delete this award.

PENALTIES AND ATTORNEY'S FEES
Plaintiffs contend the jury erred in failing to award penalties and attorney's fees under La.R.S. 22:658 and 22:1220. This contention has merit with respect to R.S. 22:658, but not as to R.S. 22:1220.
In order to prevail under La.R.S. 22:658, the UM claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within the applicable statutory period, and that the failure to timely tender a reasonable amount was arbitrary and capricious. Champagne v. Hartford Cas. Ins. Group, 607 So.2d 752, 757 (La.App. 1st Cir.1992). A "satisfactory proof of loss" means that the insured has received sufficient information to "fully apprise the insurer of the insured's claim." McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La.1985). The determination as to whether an insurer's handling of a claim is arbitrary and capricious is one of fact, which should not be disturbed on appeal unless manifestly erroneous. Champagne, 607 So.2d at 757.
State Farm argues plaintiffs' proof of loss was insufficient because plaintiffs, at the time of their initial demand, failed to disclose other automobile accidents in which Maher was involved. One of these accidents occurred shortly before the May 13, 1989 accident, and the other shortly thereafter.[1] We agree with State Farm that it was entitled to additional time after discovery of these accidents to investigate and evaluate the disputed claim in light of this new information. However, the record reveals State Farm had knowledge of these two accidents no later than February 18, 1991, when Maher's deposition was taken. Further, State Farm's claim adjuster testified that as of May 17, 1991, she had in her possession all necessary information, including information regarding the other accidents, to evaluate plaintiffs' claim. On that date, she knew the $25,000.00 liability policy was insufficient and requested authorization from her supervisors to tender $75,000.00 to plaintiffs under the UM policy. Authorization to tender the $25,000.00 limits of the Windham liability policy and $75,000.00 under the UM policy was granted on June 26, 1991. Thereafter, plaintiffs were paid $25,000.00 under the liability policy, and released the Windhams from further liability by a release dated July 30, 1991. However, before making the $75,000.00 tender under the UM policy, State Farm's attorney was instructed to first attempt to settle plaintiffs' UM claim for $50,000.00. This attempt was unsuccessful and an unconditional tender of $75,000.00 was ultimately made to plaintiffs by letter dated August 20, 1991. No amount was tendered under the UM policy in the interim.
When satisfactory proof of loss has been made and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due. McDill, 475 So.2d at 1091. This amount must be tendered unconditionally, not in settlement *680 of the case, but to show good faith and the insurer's compliance with its contractual duties. The amount due is that amount over which reasonable minds could not differ. McDill, 475 So.2d at 1091-92.
It is beyond serious dispute that State Farm was aware no later than May 17, 1991, that Maher's injuries exceeded the $25,000.00 limits of the Windham liability policy, and that State Farm would have some liability under the UM policy. Although the exact amount of plaintiffs' injuries was not established, there is little question that State Farm had some liability to plaintiffs under the UM policy. Nevertheless, State Farm did not tender any amount under the UM policy until August 20, 1991. Although the amount tendered at that time was reasonable, the tender was not made timely. State Farm's refusal to tender any amount under the UM policy within the statutory period was arbitrary and capricious. The jury's finding to the contrary is not supported by the record and is manifestly erroneous. Accordingly, we reverse that portion of the trial court judgment and hereby assess penalties against State Farm in accordance with La. R.S. 22:658B(1)[2] in the amount of $9,519.54, consisting of "ten percent damages on the total amount of the loss" (i.e., 10% of $95,195.44).
In addition to statutory penalties, attorney's fees are also due under La.R.S. 22:658 as a result of State Farm's arbitrary failure to make a timely tender. An award of attorney's fees under this provision should be based on the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the amount in controversy, the novelty and difficulty of the questions involved, and the percentage fixed for attorney's fees in the plaintiff's contract. Malbrough v. Wallace, 594 So.2d 428, 437-38 (La. App. 1st Cir.1991), writ denied, 596 So.2d 196 (1992).
The jury trial in this case lasted three days. The litigation involved the taking of numerous depositions, including five medical depositions which were introduced at trial. However, the liability of Michael Windham was not seriously disputed, and no complex or novel questions of law were involved at the trial level. The issues that were raised were primarily factual, including Maher's comparative fault, causation, penalties, attorney's fees, and quantum. Because the damages assessed were less than the amount already tendered, the trial did not result in any additional recovery for plaintiffs. Under these facts, it is our opinion that an award of attorney's fees in the amount of $7,500.00 is appropriate.
Plaintiffs' additional argument that they are also entitled to damages under La.R.S. 22:1220 is without merit. Under this provision, an insurer owes his insured a duty of good faith and fair dealing, including the duty to adjust claims fairly and promptly. However, in order for an insurer to be liable for damages under this provision, the insured must prove that he sustained damages as a result of the insurer's breach. Champagne v. Hartford Cas. Ins. Group, 607 So.2d 752, 758 (La.App. 1st Cir.1992). Unlike La.R.S. 22:658, the penalty provision of La.R.S. 22:1220 is applicable only after a showing is made of actual damages resulting from the breach of the insurer's duties. Id. In this case, plaintiffs have not established any actual damages as a result of a breach of the insurer's duties under La.R.S. 22:1220. Therefore, we find no error in the jury's rejection of this claim.

EXEMPLARY DAMAGES
La.C.C. art. 2315.4 provides that an award of exemplary damages may be made:
[U]pon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication *681 while operating a motor vehicle was a cause in fact of the resulting injuries.
Plaintiffs maintain they should have been awarded exemplary damages under this provision because of Michael Windham's intoxication and reckless disregard for the safety of his passengers. Specifically, plaintiffs note that, although the jury returned interrogatories finding Michael operated his father's vehicle under the influence of alcohol in wanton and reckless disregard of the safety of others, the jury found in a separate interrogatory that this conduct was not a legal cause of plaintiffs' damages. Plaintiffs contend the latter finding was contrary to the evidence.
La.C.C. art. 2315.4 provides that exemplary damages may be awarded when certain requirements are met, but does not mandate such an award. The decision to award exemplary damages rests within the sound discretion of the trier of fact. Boulmay v. Dubois, 593 So.2d 769, 775 (La.App. 4th Cir. 1992).
La.C.C. art. 2315.4 has the dual purpose of penalizing (and thus deterring) drunk drinkers and providing damages for the victims of such drivers. Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 912; writ denied, 94-0806 (La. 5/6/94), 637 So.2d 1056. Since the tortfeasor in this case was released prior to trial, the jury reasonably could have concluded it would serve no purpose to award exemplary damages against the plaintiffs' UM insurer. Such an award would have no deterrence effect on the offending tortfeasor. See Boulmay, 593 So.2d at 775. In any event, the jury's decision not to award exemplary damages is a matter within its sound discretion. We find no abuse of discretion in this case.

CONCLUSION
For the above reasons, the judgment of the trial court is amended to increase the assessment of damages sustained by Maher Khaled from a total of $90,502.00 to a total of $95,195.44, consisting of the following items of damages: $75,000.00, general damages; $8,409.44, past medical expenses; and $11,786.00, past loss wages. The trial court judgment is further amended to eliminate the amount assessed for future medical expenses. That portion of the trial court judgment rejecting plaintiff's claims for penalties and attorney's fees pursuant to La.R.S. 22:658 is reversed and it is hereby ordered that penalties in the amount of $9,519.54 and attorney's fees in the amount of $7,500.00 are assessed in favor of plaintiff, Maher Khaled, and against defendant, State Farm.
The combined total of Maher Khaled's damages (after reduction for ten percent comparative fault), and the statutory penalties and attorney's fees assessed herein is $102,695.44. State Farm is entitled to a credit of $108,580.05 against this amount for prior payments of $25,000.00 under the liability policy, $75,000.00 under the UM policy, and $8,580.05 in medical payments under the liability and UM policies. Since the amount of the credit exceeds the total amount assessed against State Farm, that portion of the trial court judgment dismissing plaintiffs' claims against State Farm is affirmed.
The judgment of the trial is affirmed in all other respects. Plaintiffs are to bear all costs of this appeal.
REVERSED IN PART; AMENDED IN PART; AND AFFIRMED, AS AMENDED.
NOTES
[1] On March 17, 1989, a vehicle in which Maher was a passenger was struck from behind while stopped at a traffic light. Maher sustained a soft tissue injury to his neck, which was treated conservatively by Dr. John Clifford, a neurosurgeon. According to Dr. Clifford, the symptoms from this injury subsided completely by July 10, 1989.

Maher was involved in a one-vehicle accident on August 1, 1989. He testified he swerved to avoid a car which pulled out in front of him and ended up sliding into a ditch. Maher stated that the damage to his vehicle was minor, and he was not injured. This testimony was corroborated by the police officer who investigated the accident.
[2] La.R.S. 22:658 has been amended numerous times. The applicable provision is determined as of the date the right to the penalty came into existence, which in this case was 1991. Malbrough v. Wallace, 594 So.2d 428, 437 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (1992). Accordingly, La.R.S. 22:658B(1), as amended and reenacted by Act No. 262 of 1990, is applicable herein.