529 So.2d 1296 (1988)
John REDONDO
v.
CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, and Marvin H. Lott.
No. 88-CA-0069.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 1988.
Rehearing Denied September 14, 1988.
*1297 Wiedemann & Fransen, Lawrence D. Weidemann, W. Lloyd Bowers, New Orleans, for appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, Bruce J. Toppin, New Orleans, for defendants.
Before GULOTTA, C.J., and GARRISON and PLOTKIN, JJ.
GULOTTA, Chief Judge.
This is an appeal on quantum only from a $100,000 jury verdict in favor of a plaintiff injured in a rear-end vehicular collision. Seeking an increase, plaintiff contends that the award is inadequate because he has sustained a ruptured lumbar disc that has permanently disabled him from employment. Although the evidence supports a conclusion that plaintiff can return to work, we increase the award to the sum of $183,431.85, the minimum amount within the jury's discretion.
On June 20, 1985, fifty-six year old John A. Redondo suffered a lower back injury when an 18-wheeler struck the rear of his car while he was stopped in traffic. After the accident, plaintiff received conservative medical treatment for low back pain until February 21, 1986, when he underwent a microsurgical laminectomy to remove a portion of a ruptured disc at the L-5,S-1 level.
On July 31, 1985, plaintiff filed suit against the truck driver, the driver's employer, and its insurer. After a four day trial, the jury, in response to interrogatories, found the defendant driver solely at fault and awarded plaintiff $100,000.00 in damages, including specials.
Appealing, plaintiff argues that prior to the collision he enjoyed good health and had been continuously employed as a salesman for twenty years, whereas after the accident he has been unable to work and now has a 15% permanent, partial low body impairment causally related to the collision. Even assuming he could have returned to sedentary employment twenty-one months after the accident as indicated by his neurosurgeon, plaintiff contends that he has lost $61,677.00 in wages and has incurred stipulated medical expenses of $21,754.95, leaving only $16,568.05 of the jury's total award as recompense for his pain, suffering, mental anguish, and disability. Redondo claims that the minimum general damage award for his ruptured lumbar disc should be $100,000.00, an amount when added to the proved loss of earnings and stipulated medical expenses warrants an increase of a total award to at least the sum of $183,431.85. Citing further testimony *1298 from an economist, plaintiff argues that his combined loss for past and future wages justifies an even higher minimum award of $329,439.79 because he is totally and permanently disabled from any future employment.
On the other hand, defendants claim that the jury did not abuse its discretion in awarding damages because it reasonably could have concluded the vehicular accident only partially caused plaintiff's lower back problems. Defendants contend that the primary reason for plaintiff's surgery was an impingement of a nerve caused by arthritic spurring in his back, a condition normal for a fifty-six year old person. They also point out that an examining neurosurgeon's testimony supports a conclusion that plaintiff could have returned to sedentary work fourteen months post-accident. According to defendants, considering the medical expenses and lost wages for this fourteen month period, the jury's award for pain and suffering is actually $37,000.00, an amount adequate for plaintiff's injury of limited duration. We disagree.
Immediately following the accident, plaintiff consulted Dr. Antoine H. Ky, a chiropractor who treated him from June 20 until August 2, 1985 for muscle spasm of the back and neck. In Dr. Ky's opinion, plaintiff's symptoms were related to the accident.
Dr. Donald Gordillo, a physician with expertise in trauma, treated plaintiff conservatively for several months following the accident for a suspected disc problem in the lumbar region, until he referred him to Dr. Kenneth Vogel, a neurosurgeon who performed the laminectomy. According to Dr. Gordillo, plaintiff's right sciatic nerve pain was helped by the surgery, but plaintiff still needed additional surgery because of continued complaints of discomfort in the right leg. Dr. Gordillo testified that despite plaintiff's underlying arthritis, the trauma of the accident had worsened his condition and precipitated his lower back problem. This physician testified that plaintiff has been disabled since the accident and cannot return to his normal work activity as a salesman.
Dr. Kenneth Vogel, the neurosurgeon who performed the laminectomy on February 21, 1986, testified that plaintiff had abnormal discs at the L-3,4 and L-4,5 levels, as well as a torn and bulging L5.S1 disc that was pressing on a nerve and causing his leg pain. According to this physician, in all probability plaintiff's low back problems and injured discs were causally related to the June, 1985 accident. At the time of trial in July, 1987, Dr. Vogel further stated that plaintiff had a 15% permanent partial lower body impairment and should avoid activities requiring him to lift, push, or pull greater than 50 lbs., or bend repeatedly. Upon last examining plaintiff in August, 1986, Dr. Vogel had projected that by February 17, 1987 plaintiff could return to gainful employment within these limitations. Although Dr. Vogel noted degenerative changes in plaintiff's lower back, he concluded it was very unlikely that they had caused his symptoms.
Dr. Carl F. Culicchia, a neurosurgeon, examined plaintiff on August 15, 1986, about six months after surgery. This physician found no objective findings or neurological abnormalities of a disc to indicate active nerve root compression that would account for plaintiff's continued symptoms of pain. Although Dr. Culicchia saw no reason why plaintiff could not return to his former level of activity, he deferred to Dr. Vogel's diagnosis that the vehicular accident had caused plaintiff's ruptured disc.
Dr. Jose L. Garcia Oller, a neurosurgeon who had been called in by Dr. Gordillo for a second opinion to evaluate plaintiff prior to surgery, diagnosed a ruptured disc with bi-lateral sciatica attributable to the June, 1985 accident. Dr. Oller testified that the cause and effect relationship between the accident and plaintiff's ruptured disc was "unquestionable", and he did not relate his arthritis to any of the symptomatology produced by that accident. Dr. Oller was of the opinion that plaintiff's residual problems *1299 of pain and limitation of motion preclude him from competitive gainful employment and will require future surgery.
Concerning plaintiff's employability following his accident, the jury also had the benefit of the testimony of two other experts. Susan L. Smith, an expert in the filed of occupational therapy and vocational rehabilitation, evaluated plaintiff one year post-surgery. She found Redondo deliberate in his movements with minimal balance and limited endurance. She concluded that he could not meet the physical demands of any competitive work, whether it be as a car salesman, house estimator, or insurance salesman (jobs that plaintiff had performed before the accident).
On the other hand, Jay Hubbard, an expert in the field of vocational consulting, concluded that plaintiff can still perform all the same types of work he had done in the past. Based on Dr. Vogel's assessment of a 10-15% disability and restrictions on lifting an excess of 50 lbs. or any repetitive bending, this witness was of the opinion that even with his restrictions and age, plaintiff was still employable as an insurance or automobile salesman.
Dr. Melville A. Wolfson, an economist specializing in calculating the economic impact of injuries, calculated plaintiff's average income for 30 months prior to the accident at $35,240.00 per year or $2,937.00 per month. Using this figure, Wolfson determined plaintiff's past lost earnings from the date of the accident to date of trial to be $71,043.84. Assuming a minimum work life expectancy of 4.4 years until age 65, this witness further testified that plaintiff's future earnings loss would be $136,641.00 based on an inflation and age adjustment factor of 3.8% and a discount rate of 8.3%. With an 11.1 year work life expectancy until age 70, plaintiff's future earnings loss would be $317,977.00. On cross examination, assuming that plaintiff could have earned a minimum wage since the accident, Wolfson testified that plaintiff's past earning loss would have been $56,343.00 and his future loss of income would be $136,641.00 (until age 65) or $254,814.00 (until age 70).
Corroborated by the testimony of his two adult sons and a neighbor, plaintiff testified about his pain and his inability to perform his normal activities since the accident. Although he had previously worked at multiple jobs as a salesman of insurance, aluminum siding, and automobiles, he stated that he cannot sit or stand for prolonged periods and has been unable to perform any type of work since the accident. Redondo acknowledged that he is able to sit at a desk and use a telephone, but he has not tried to earn income in this capacity.
Based on the extensive medical testimony, we conclude that plaintiff has carried his burden of proof to show that his ruptured lumbar disc was causally related to the rear-end collision. It is clear that the arthritic condition preexisting in his back was insignificant as a causal factor in his resulting surgery and disability. The major question confronting us, therefore, is whether the jury's total award constitutes an abuse of its discretion for plaintiff's injuries and disability.
Recognizing the conflict in testimony concerning plaintiff's ability to return to gainful employment, the jury may very well have concluded, based on the testimony of Dr. Vogel and Jay Hubbard, the vocational consultant, that plaintiff could have returned to work twenty-one months post-accident. Considering the uncontradicted testimony that plaintiff was earning $2,937.00 per month prior to the accident, his lost wages would have amounted to $61,677.00 for this period. This figure, together with the stipulated medical expenses of $21,754.95, leaves only $16,568.05 of the total award as general damages for pain and suffering, mental anguish, and disability. This amount is woefully inadequate for the severity of plaintiff's injury and constitutes an abuse of the jury's discretion.
Having so concluded, and though we do not seek uniformity of awards, we *1300 may look to other decisions involving similar injuries to determine the minimum amount within the jury's discretion to compensate plaintiff for his injuries. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). In Riley v. Winn-Dixie Louisiana, Inc., 489 So.2d 931 (La.App. 5th Cir. 1986), writ denied 494 So.2d 329 (La.1986), our brothers on the Fifth Circuit surveyed similar cases and concluded that a general damage award of $100,000.00 is the low range for a herniated lumbar disc resulting in a laminectomy after conservative treatment like Redondo's. Considering the nature of plaintiff's injuries, we likewise conclude that the jury should have awarded at least $100,000.00 in general damages in addition to the $21,754.95 in stipulated medical expenses and the $61,677.00 minimum in lost earnings. Accordingly, we conclude that the jury's total award of $100,000.00 must be increased to the sum of $183,431.85, the lowest amount within the jury's discretion.
Accordingly, the judgment in favor of plaintiff and against defendants in the sum of $100,000.00 is amended and increased to the sum of $183,431.85. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.