572 So.2d 197 (1990)
Edward E. MILLER, Jr.
v.
STATE of Louisiana, et al.
No. CA 89 1499.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Writ Denied January 18, 1991.
*198 L. Jay McCreary, New Orleans, for plaintiff-appellee.
Debra Cottrell, New Orleans, for defendant-appellee St. Tammany Police Jury.
Guy J. Romano, Metairie, for defendant-appellee Parish of St. Tammany and Twin City Fire.
Albert D. Giraud, Covington, for Allstate Ins.
Kenney L. Riley and Frank Gremillion, Baton Rouge, for defendant-appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is a personal injury suit by Edward E. Miller, Jr., against the State of Louisiana through the Department of Wildlife and Fisheries and/or through the Department of Transportation and Development, the Department of Highways. From a judgment for plaintiff and against the State of Louisiana through the Department of Wildlife and Fisheries, the State has appealed. Plaintiff has answered the appeal seeking an increase in quantum.

FACTS
During the daylight hours of March 31, 1985, Edward Miller was operating his automobile on Old U.S. Highway 11 within the confines of the Pearl River Wildlife Management Area in St. Tammany Parish. He had driven his automobile onto the wildlife management premises to locate a wildlife officer to report a fish kill for an acquaintance who lived nearby.
The trial judge in reasons for judgment found:
The Court finds that the roadway where the accident occurred was owned by the State of Louisiana and was under the control and supervision of the Department of Wild Life [sic] [and] Fisheries at the time of the accident. The State through the Department of Development and Transportation replaced the bridge in question at some time prior to the date of Mr. Miller's accident. The dirt adjacent to the bridge was back filled but was not properly compacted. Asphalt was laid over the improperly compacted road bed. As a result of the substandard road work a significant dip developed in the roadway adjacent to the bridge.
Despite this dangerous condition on the road and the Department of Wild Life [sic] and Fisheries' ability to control the traffic on the road or close the road, no warning signs or speed limit signs were posted.
On or about March 31, 1985 Mr. Miller was driving on this defective road. He was traveling at approximately 30 to 35 miles per hour when he hit the depression in the road. The drop into the depression in the road was so violent that it caused one of the tires on Mr. Miller's car to blow out and bent the rim on that wheel so that it was ruined. Mr. Miller's car bounced so violently when it hit the depression in the road that it threw him *199 to the passenger side of the car and caused severe injuries to his back.

TRIAL COURT
The trial court rendered judgment for plaintiff and against the State for a total award of $271,414 which consisted of: $59,109 in future lost income; $42,305 in past medical expenses; $20,000 in future medical expenses; and $150,000 in past, present, and future pain and suffering.

ASSIGNMENTS OF ERROR
In appealing, the state contends the trial court erred:
1) in finding that an accident occurred as described by the plaintiff;
2) in finding that the depression in the roadway was a defect which rendered the Department liable to the plaintiff, assuming the accident; and
3) in holding the Department liable to the plaintiff and in failing to grant to the state the limitation of liability provided in La.R.S. 9:2791 and R.S. 9:2795.
In answering the appeal, plaintiff seeks an increase in the amount awarded for future loss income/diminished earning capacity, and an increase in the amount awarded for past, present, and future physical pain and suffering.

I
The State contends the trial judge erred in finding that an accident occurred as described by plaintiff.
Implicit in the trial court's judgment for plaintiff is its belief of plaintiff's version of how the accident happened as well as its belief and acceptance of plaintiff's expert witnesses' conclusion that the accident could have happened as plaintiff described. Plaintiff was alone in his vehicle when the accident happened, and there were no other witnesses to the accident. The State's expert witness differed in his conclusion from that reached by plaintiff's experts. Several witness employees of Wildlife and Fisheries testified that they had no problem negotiating the same roadway as plaintiff.
The Louisiana Supreme Court has again reminded the courts of appeal of the proper appellate review standard, when in Rosell v. ESCO, 549 So.2d 840 (La.1989), Justice Dennis reviewed the proper role of the courts of appeal in reviewing conflict in the testimony, reasonable evaluations of credibility, and reasonable inferences of fact and concluded:
Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. (Citations omitted.)
549 So.2d at 844 and 845.
In Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La.1990), again speaking through Justice Dennis, the supreme court extended the appellate review of credibility questions to expert testimony when the court said "[t]he rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound."
The State has not shown this court where documents or objective evidence so contradicts the plaintiff's version of the accident, or the plaintiff's version itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit plaintiff's version. Furthermore, the State has failed to show how the reasons or conclusions of plaintiff's experts are "patently unsound."
Therefore, after a thorough and complete review of the record we conclude this assignment of error lacks merit.

II
In the second assigned error, the State argues the depression in the roadway *200 was not a defect sufficient enough to create an unreasonable risk of injury to an ordinarily prudent and reasonable person.
As found by the trial court, there were no warning signs such as "DIP AHEAD," nor were there any speed limit signs. The dip or depression in question was from five to six inches in depth and occurred across the entire width of the roadway. The testimony is in conflict as to when a reasonable driver would first notice this depression: anywhere from 25 to 50 feet before the depression. Mr. Miller drove along this black topped roadway at approximately 30 to 35 miles per hour without suggestion that he drive at a slower speed. As he crossed this depression, suddenly and without warning, a tire blew out, and the jolt tossed Mr. Miller about in the passenger compartment of his vehicle.
The State argues that its employees drove this same roadway and traversed this depression many times. However, it must also be implicit in the trial court's judgment that it discounted such testimony because anyone who traveled this roadway several times would know of the depression and naturally take precaution. Additionally, state employees working at the management area drove pickup trucks with heavier tires than found on a passenger vehicle. As remarked by an expert witness, such a vehicle could traverse this depression better than a passenger automobile. In testifying that they saw many visitors to the management area traverse this same depression without mishap, the state employees readily admitted that they could not testify as to how fast these visitors were traveling.
When we consider the plethora of cases involving highway shoulder accidents, and the depth of depressions found alongside the highways in those cases, we conclude that the depression in this case was a defect which created an unreasonable risk of harm.
Suffice to say, this was a roadway owned by the state. The public traveled this roadway and, thus, it was subject to the rules governing state maintenance and responsibility. The law and jurisprudence as it relates to the responsibility of the state to maintain its highways is so well settled that a discussion thereof would add nothing to this opinion.
Therefore, this assignment of error lacks merit.

III
In its third assignment of error, the State contends that the trial court failed to apply La.R.S. 9:2791[1] and R.S. 9:2795[2]. The State submits there are two questions involved: (1) was Mr. Miller on the premises for recreational purposes; and (2) should Section (E) of La.R.S. 9:2795 be applied retroactively.

*201 Recreational Purpose
The Pearl River Game Management Area is used for recreational purposes. However, plaintiff only ventured onto the management area to report a fish kill to Wildlife and Fisheries officials. The State argues that the fish kill was taking place in a river as it ran through the game management area, and that plaintiff's mission was "directly related to fishing on the management area." Plaintiff was not fishing, was not going fishing, nor was plaintiff on the management area for other recreational purposes as intended by both statutes.
The State also argues that a narrow interpretation of the statutes as to whether someone is or is not on the premises for recreational purposes will create two standards of care. We pretermit further discussion because of our answer to the second question posed by the State.

Retroactive Application
The State submits that Section (E) of La.R.S. 9:2795 should be applied retroactively to those matters not reduced to judgment prior to the effective date of the Section. In support the State cites Mullet v. State, Department of Transportation and Development, 539 So.2d 897 (La.App. 4th Cir.), writ denied, 541 So.2d 1390 (La. 1989).
Absent Section (E), R.S. 9:2795 does not limit the liability of public bodies. Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097 (La.1990). Thus, the State argues the retroactive application of Section (E) is important.
Section (E) of La.R.S. 9:2795 was added by Act 976 of 1986. The effective date of legislation absent a specified earlier or later effective date is "on the sixtieth day after final adjournment of the session in which" the act was enacted. La. Const. Art. III, § 19. The effective date for acts of the 1986 Regular Session of the Louisiana Legislature was August 30, 1986.
Mullet dealt with the retroactive application of La.R.S. 13:5106(B)(1) which set a monetary limit of liability for the Department of Transportation and Development. The Fourth Circuit Court of Appeal concluded that a monetary limit was procedural rather than substantive in nature and thus could be applied retroactively. However, in the case sub judice the act of the legislature in question does not apply to the amount of liability, but whether liability will exist, or stated another way, whether a cause of action exists. In Lott v. Haley, M.D., 370 So.2d 521, 524 (La.1979), the supreme court held "where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process." Thus, Section (E) is substantive and cannot be applied retroactively.

ANSWER TO THE APPEAL
Plaintiff seeks an increase in the amount awarded by the trial court for lost future income and for pain and suffering.
The trial court made the following findings of facts as to plaintiff's injury:
As a result of the injuries, Mr. Miller had to undergo back surgery at Methodist Hospital. After the surgery, he was hospitalized at Methodist a second time because a blood clot developed in his leg. He also had to undergo treatment at the Touro Infirmary Pain Center to help him deal with the pain caused by the trauma of the injury, the ensuing surgery and complications. His ability to earn a living has been impaired by the injuries and ensuing surgery. He continues to have back pain and some disability. Dr. Llewellyn, his treating physician, recommends that yet another surgery be performed on Mr. Miller's back.
Mr. Miller had a back injury and back surgery prior to the accident out of which this case arises. He was left with some disability from that prior injury. However, that disability was increased by this accident.
Dr. Cornelius Gorman, vocational rehabilitation expert, evaluated the plaintiff prior to this accident and found him to be employable at that time. He evaluated the plaintiff after this accident and ensuing surgery and now finds plaintiff among the hard core unemployable. He *202 finds that the plaintiff could be employed by a forgiving employer. Dr. R.C. Llewellyn thinks there is an eight out of ten chance that Mr. Miller can be rehabilitated to a zero percent functional disability for a meaningful job assignment.
Dr. Gorman discussed three job tracks in relation to plaintiff's employability. He called these tracks A, B, and C. A is the lowest track with employment at minimum wage. C is the top track with employment after some form of college training. B is the medium track between A and C.
I find that prior to the accident, which is the subject of this lawsuit, the plaintiff could have earned the income contemplated in track B. I think that Mr. Miller still has the capacity to do some work. I believe that he can earn the income contemplated in track A.
The defendant is liable to plaintiff for the difference between what he could have earned prior to March 31, 1985 and what he can currently earn. Plaintiff was not working at the time of the accident and had not worked for some time prior to that time. Therefore, there is no award for past lost earnings.
On March 12, 1989, Dr. Philip W. Jeffress computed the future lost income for plaintiff. I have used his figures to determine plaintiff's loss of future income. That loss is the difference between track A and track B.
I find in favor of plaintiff and against the State of Louisiana through the Department of Wild Life [sic] and Fisheries and award the plaintiff the following:
$59,109.00 future lost income
$42,305.00 past medical expenses
$20,000.00 future medical expenses
$150,000.00 past, present and future pain and suffering
for a total award of $271,414.00 plus legal interest thereon from the date of judicial demand until paid and all costs of these proceedings.
In seeking an increase in the pain and suffering award, plaintiff argues that the range of awards are from $100,000 for a single ruptured lumbar disc, Redondo v. Consolidated Freightways Corporation of Delaware, 529 So.2d 1296 (La.App. 4th Cir.), writ denied, 533 So.2d 363 (La.1988), to $350,000 for two ruptured discs, Thibodaux v. Acme Truck Lines, Inc., 443 So.2d 716 (La.App. 5th Cir.1983), writ denied, 445 So.2d 439 (La.1984). The basis of plaintiff's argument is that a single ruptured disc was worth $100,000 in Redondo and $175,000 in Thibodaux. Thus, the trial court should have awarded a minimum of $200,000 up to a maximum of $350,000, and an award of $150,000 is an abuse of discretion.
However, as this writer said in Hanzy v. Sam, 385 So.2d 355, 358 (La.App. 1st Cir.), writ refused, 386 So.2d 357 (La.1980):
Our purpose and our constitutional role is to guarantee by appellate review that the trial judge or jury in fulfilling its role has not so excessively abused its much discretion that our consciences would be shocked if such an award were allowed to remain untouched.
Here again we conclude this award, though relatively low, does not shock our consciences to compel us to adjust the amount awarded.
In arguing that the trial court abused its discretion in the award of future wages and diminished earning capacity, plaintiff depends primarily on the testimony of the vocational rehabilitation expert. As pointed out in the trial court's reasons for judgment, Dr. Llewellyn, the treating physician, was of the opinion there was an eight out of ten chance plaintiff could be rehabilitated to a zero percent functional disability. Based on this testimony, we cannot say that the trial court abused its great discretion in the award.
Therefore, for the above reasons, the judgment of the trial court is affirmed at defendant-appellant's costs.
AFFIRMED.
NOTES
[1] La.R.S. 9:2791 provides:

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
[2] La.R.S. 9:2795(E) provides:

The limitation of liability provided in this Section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries regardless of the purposes for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes.