11 BROWN, Judge.
This case is before us on remand from the Louisiana Supreme Court. In a unanimous decision, the supreme court reversed this court’s decision (or indecision) on the issue of causation and remanded the matter for a determination of quantum.[1] Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615 (La. 02/20/95), 650 So.2d 757.

DISCUSSION

Causation having been determined by the supreme court, the sole issue before this court is the amount of damages to which plaintiffs are entitled.
In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the award in an amount which is just compensation for the damages revealed by the record. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980); Whitaker v. Mullinax, 628 So.2d 222 (LaApp. 2d Cir.1993); Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (LaApp. 2d Cir.1991), writ denied, 588 So.2d 1119 (La.1991).

General Damages

General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of life or lifestyle that cannot be measured definitively in terms of money. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); Whitaker, swpra; Beckham v. St. Paul Fire and Marine Ins. Co., 614 |aSo.2d 760 (La.App. 2d Cir.1993). There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Estate of Thomas v. State, D.O.T.D., 604 So.2d 617 (LaApp. 2d Cir.1992), writ denied, 608 So.2d 167 (La.1992). Factors to be considered in assessing quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173 (LaApp. 4th Cir.1991), writ denied, 594 So.2d 1315 (La.1992); Miller v. Winn-Dixie Stores, Inc., 527 So.2d 989 (La. App. 3d Cir.1988), writ denied, 531 So.2d 763 (La.1988).
Mrs. Maranto suffered from general aches and pains from the time of the accident until the pain localized in her low back around the middle of September. Although experiencing pain, she returned to work full-time on *506 September 5th, approximately ten days after the accident, and continued her nursing duties until the middle of October when Dr. Goodman diagnosed her condition as disc herniation. Plaintiff began experiencing pain in her right leg and hip around October 8th and noticed her right foot drooping on October 18, 1989. On October 19th, an MRI revealed a rupture at the L-5, S-l level. Surgery to remove the disc material was performed on October 22nd. Mrs. Maranto did not realize any significant improvement from the discectomy; she continues to suffer from back and right leg and hip pain, though her foot drop has improved to some degree. Though she does not walk with a limp, Mrs. Maranto is unable to keep up her former pace. Because of the lack of feeling on the outside of her right foot, she has to be careful when stepping down.
Mrs. Maranto’s activities are limited and she is unable to do anything |3for an extended period of time. Constant pain has prevented her from returning to work. Her doctors agree that she has chronic pain disorder and that she has realized maximum medical recovery. Her disc injury and related problems have affected her relationship with her husband and children. She is unable to participate in activities with her family and can no longer take care of her house without help from her husband and children. Plaintiff spends most of the day in bed because lying down is the most comfortable position for her back. She is very depressed and her sexual relationship with her husband has been negatively affected. We feel that $150,000 will compensate Mrs. Maranto for her pain and suffering, mental anguish and physical disability.[2]

Loss of Earnings and Earning Capacitg

In determining an award for loss of earnings and earning capacity, what the plaintiff earned before and after the injury does not constitute the measure. While plaintiffs earning capacity at the time of injury is relevant, it is not necessarily determinative of her future ability to earn. Hob-good v. Aucoin, 574 So.2d 344 (La.1990); Folse v. Fakouri, 371 So.2d 1120 (La.1979); Coco v. Winston Industries, 341 So.2d 332 (La.1976); Laing v. \4American Honda Motor Co., 628 So.2d 196 (La.App.2d Cir.1993). Damages should be estimated on the injured person’s ability to earn money, rather than what she actually earned before the injury. Hobgood, supra.
The factors to be considered in determining loss of future income include the plaintiffs physical condition before and after her injury, her age and life expectancy, prior to and after the accident; her previous earnings; her work record; the amount the plaintiff probably would have earned absent the injury; and the probability she would have continued to earn wages over the balance of her working life. Laing, supra; Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App.2d Cir.1990), writ denied, 573 So.2d 1135 (La.1991).
In computing loss of future income, it is necessary to determine whether and for how long a plaintiffs disability will prevent her from engaging in work of the same or similar kind that she was doing at the time of her injury. A determination must also be made of whether plaintiff has been disabled from work for which she is fitted by training and experience. Laing, supra; Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La.App.2d Cir. 1988).
A review of the record indicates that the injuries Mrs. Maranto sustained as a result of the automobile accident will prevent her from returning to work as a registered nurse. Dr. James Cook, an expert in voca *507 tional rehabilitation, testified that based on his review of plaintiffs medical records, he does not think that she will be able to return to work as a general duty registered nurse. Dr. Richard Galloway, rehabilitation |5counselor, performed a vocational evaluation of Mrs. Maranto. He concurred in the opinion that plaintiff is unable to return to her duties as a nurse. According to Dr. Galloway, plaintiffs physical limitations have reduced the number of nursing jobs available to her by 95%. Mrs. Maranto testified that she is unable to return to work because of constant pain.
In order to establish her projected loss of income, Mrs. Maranto relied on the testimony of Dr. Melvin Harju. Dr. Harju based his calculation of lost earning capacity on tax data, answers to a lost income information questionnaire and a functional capacity evaluation. The base figure for Dr. Harju’s calculation of loss of past income was the median or expected starting rate for general duty nurses with experience in the Shreveport area for the year 1991. This calculation took into account that Mrs. Maranto had just returned to full-time employment. Dr. Harju projected a total loss of past income of $102,-411, which figure includes lost monetary fringe benefits.
Based on the Marantos’ testimony that plaintiff intended to work full-time as a nurse until retirement age of 65, Dr. Harju calculated plaintiffs lost future earning capacity from trial (July 6, 1992) until her projected retirement, a period of 22.8 years, for a total of $558,223 (including loss of fringe benefits calculated at 21% of salary, $680,940). Dr. Harju also calculated plaintiffs net loss of future earning capacity using the national average expected work life, 16.2 years, and came up with a figure of $498,281.
Defendants also presented evidence regarding Mrs. Maranto’s loss of | seaming capacity. Dan Cliffe, a C.P.A. specializing in the evaluation of economic losses, calculated plaintiffs loss of earning capacity based on a potential work life expectancy of 14.65 years from the time of trial. In coming up with a figure for plaintiffs potential average income, Mr. Cliffe considered her earnings for the six-week period from September 1 to October 24, 1989, as well as tax returns from previous years, and came up with an average salary of $22,437. Mr. Cliffe calculated Mrs. Maranto’s gross lost income (for the period October 25, 1989, to July 6, 1992) as $60,566 and her gross future loss of earning capacity in the range of $232,889 to $285,012. Using a multiplier of 22.3 years for work life expectancy, Mr. Cliffe came up with a range of $259,775 to $352,183 for loss of future earning capacity.
Awards for loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Courts must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which work an injustice on neither party. Whitaker, supra; Anderson, supra. After proper consideration, we exercise our discretion and fix Mrs. Maranto’s loss of past earnings and future earning capacity at $450,000.

Loss of Household Services

Louisiana law allows, as an element of damages, reasonable housekeeping expenses necessitated by the incapacity of an injured spouse. Odom v. Claiborne Electric Cooperative, Inc., 623 So.2d 217 (La.App.2d Cir.1993), writ denied, 629 So.2d 1171 (La. 1993); Mims v. Reliance |7Insurance Co., 535 So.2d 1085 (La.App.2d Cir.1988); Cushman v. Fireman’s Fund Insurance Co., 401 So.2d 477 (La.App.2d Cir.1981).
Prior to the automobile accident, Mrs. Maranto was primarily responsible for providing household services, though she was assisted by her husband and children. Robert Maranto testified that since the accident, most of the housework has been delegated to the children and he has taken over all of the yard work.
Dr. Harju calculated the value of the loss of Mrs. Maranto’s home services based on the average number of hours spent by women in the work force who also perform household services, 20.1 hours per week at $5 an hour. Replacement cost for future lost home services of 20.1 hours a week, calculated for the period Mrs. Maranto would in all *508 probability have expected to provide such services, was $200,171. However, this calculation does not take into account the fact that there are household services Mrs. Maranto can and in fact still does perform. Thus, we feel that an award of $25,000 for loss of household services is appropriate.

Loss of Consortium

LSA-C.C. Art. 2315 provides in part that damages may include loss of consortium, service and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Loss of consortium can involve loss of love and affection; loss of society and companionship; impairment of sexual relations; loss of performance of material services; loss of financial support; loss of aid and assistance; and loss of fidelity. Whitaker, supra; Finley v. |8Bass, 478 So.2d 608 (La.App.2d Cir.1985). To be compensable, it is not necessary for a claim for consortium to include damages from each type of loss. Whitaker, supra.
Mrs. Maranto testified that her relationship with her husband has been affected by the accident and resulting injuries. She is unable to provide household services and her husband has had to take over the yard work she used to do prior to the accident. Plaintiff is more short tempered and is not easy to get along with. Her injuries have negatively impacted the couple’s sex life; sexual intercourse causes her pain and the Marantos have less physical contact.
Robert Maranto testified that the couple’s sex life before the accident was normal. After the accident, their sex life is “basically zero” because he is afraid of hurting Mrs. Maranto. Prior to the accident, his wife was responsible for the house and yard; since the accident, he and the children have had to take over most of these duties. Furthermore, the Marantos had counted on Mrs. Maranto’s income and future retirement benefits. The record supports an award for loss of consortium in the amount of $35,000.[3]

Medical Expenses

Medical expenses, past and future, which are incurred by an injured plaintiff, are recoverable as an element of damages. Thames v. Zerangue, |9411 So.2d 17 (La. 1982). The record contains a stipulation that Mrs. Maranto incurred medical expenses in the amount of $16,959.17. These medical expenses are recoverable in full.

CONCLUSION

We award damages to plaintiffs, Robert and Vicki Maranto, in the amounts of $35,000 and $641,959.17, respectively, together with legal interest from the date of judicial demand until paid. Costs, here and below, are taxed to defendants.
SEXTON, J., dissents with written reasons.
LINDSAY and PRICE, JJ., dissent with reasons.
HIGHTOWER, J., dissents for the reasons assigned by SEXTON, J.

. Sitting en banc on rehearing, this court was divided four to four on the issue of causation. Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App.2d Cir. 03/30/94), 643 So.2d 167.

. For general damage awards in cases involving similar injuries, see Davis v. Sewerage & Water Board of Mew Orleans, 555 So.2d 664 (La.1989), writ denied, 558 So.2d 603 (La. 1990) ($100,000); Whitaker v. Mullinax, 628 So.2d 222 (La.App.2d Cir.1993) ($100,000); Bosworth v. Authement, 634 So.2d 1205 (La.App. 1st Cir.1993) ($150,-000); Crane v. Exxon Corp., 613 So.2d 214 (La. App. 1st Cir.1992) ($350,000); Cage v. Caruso, 611 So.2d 704 (La.App. 4th Cir.1992) ($100,000); Hoffman v. Travelers Insurance Co., 587 So.2d 143 (La.App. 4th Cir.1991) ($440,000); Miller v. State, 572 So.2d 197 (La.App. 1st Cir.1990) ($150,000), writ denied, 573 So.2d 1114 (La. 1991); Redondo v. Consolidated Freightways Corp., 529 So.2d 1296 (La.App. 4th Cir.1988) ($100,000), writ denied, 533 So.2d 363 (La.1988).

. For consortium awards in similar factual circumstances, see American Motorist v. American Rent-All, Inc., 579 So.2d 429 (La. 1991) ($25,-000); Beckham v. St. Paul Fire & Marine Insurance Co., 614 So.2d 760 (La.App.2d Cir.1993) ($35,000); Spangler v. North Star Drilling Co., 552 So.2d 673 (La.App.2d Cir.1989) ($25,000); Runnels v. Esteves, 550 So.2d 1225 (La.App. 4th Cir.1989) ($45,000), writ denied, 558 So.2d 1126 (La.1990).