712 So.2d 514 (1997)
William JACKSON
v.
CSX TRANSPORTATION, INC. and Doug Corcoran.
No. 97-CA-0109.
Court of Appeal of Louisiana, Fourth Circuit.
December 23, 1997.
Amending Decision of Limited Grant of Rehearing January 15, 1998.
Writ Denied April 3, 1998.
*516 Frank M. Buck, Jr., Robert L. Manard, Manard & Buck, New Orleans, for Plaintiff/Appellant.
Brent A. Talbot, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, for Defendant/Appellee.
Before PLOTKIN, JONES and CIACCIO, JJ.
PLOTKIN, Judge.
Plaintiff William Jackson appeals a trial court judgment awarding him $18,600 against defendant CSX Transportation, Inc. for injuries he allegedly received when he stepped into an uncovered hole on a flat railroad car during the course and scope of his employment as a switchman with CSX. The judgment represents a jury verdict awarding Jackson $62,000, reduced by 70 percent comparative negligence. CSX answered the appeal seeking modification of the judgment to award interest on court costs only from the date the amount of costs were fixed and taxed, rather than the date of the judgment. CSX also seeks the costs incurred in this court.
We amend the trial court judgment to award Jackson $150,000, the lowest possible award a reasonable factfinder could have awarded for the injury he received. We affirm the jury's finding that Jackson was 70 percent comparatively negligent in causing his own injuries, making Jackson's total award $45,000. We further amend the judgment to award interest on court costs only *517 from the date of the judgment fixing those costs. In all other respects, we affirm the trial court judgment.

Facts
Jackson allegedly suffered injuries to his leg and neck at approximately 2:15 a.m. on June 9, 1993, when he fell during the course and scope of his employment with CSX after stepping into an uncovered container housing hole on a tote car in the CSX train yard in Gentilly. A tote car is a flat car used for transporting tractor/trailers with wheels; the wheels fit into the container block housing holes. Jackson claims that the holes should to be covered when not in use; however, the hole which he stepped into was not covered. Jackson's primary claim against CSX is that inadequate lighting in the section of the train yard where the accident occurred was the primary cause of his accident.
Prior to trial, Jackson's suit against Doug Corcoran, his supervisor, was dismissed. The case preceded to trial by jury. Following a three-day trial, the jury returned a verdict in favor of Jackson for $62,000, but found that Jackson was 70 percent comparatively negligent for causing his own injuries. Post-trial, Jackson filed a motion for new trial, a motion for judgment notwithstanding the verdict, and a motion for additur. The trial judge denied those motions.
During a conference on the post-trial motions, the trial judge made some strong statements relative to his belief that CSX made fair settlement offers and that Jackson should have accepted the settlement offers. On appeal, Jackson's primary argument is rooted in his claim that the trial judge exhibited a "predisposition" against him derived from his failure to accept the settlement offers, which predisposition so tainted the jury verdict that the case should be reversed and remanded for new trial.
Specifically, Jackson claims that the trial court committed the following errors:
1. Allowing prejudicial and irrelevant voir dire of his vocational evaluation expert witness in front of the jury, rather than requiring that the voir dire be conducted outside the jury's presence.
2. Giving repetitive jury instructions which understated the duty owed by the railroad and unduly emphasized comparative negligence principles.
3. Allowing CSX's vocational rehab counselor to testify concerning hearsay material not contained in his expert report, resulting in surprise to the plaintiff.
4. Allowing CSX to introduce fabricated self-serving letters which purportedly offered rehab and/or employment to Jackson.
Jackson also claims that the jury award of $62,000 was abusively low considering the fact that he suffered a ruptured cervical disc which required surgery, and the fact that he lost both past wages and future earning capacity.
In answering Jackson's appeal, CSX argues that the trial court improperly awarded the plaintiff interest on court costs from the date of judgment, rather than from the date the amount of costs were ascertained. CSX also seeks the costs of the appeal.

I. Alleged legal errors

Because Jackson's case falls under the Federal Employers' Liability Act ("FELA"), a federally-created right, when an appellate court finds that legal errors tainted the fact-finding process, the right to trial by jury applies and the case must be remanded for retrial; this court is not allowed to perform a de novo review under that scenario. See Dice v. Akron C. & Y.R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952); Croce v. Bromley Corp., 623 F.2d 1084 (5th Cir. 1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Thus, we will first consider the alleged legal errors.
Jackson's overreaching argument on appeal is rooted in his claim that the trial judge's comments during the conference held after the filing of the post-trial motions revealed his prejudice against Jackson for failing to accept fair settlement offers and insisting on trying the case. That prejudice influenced the entire trial, especially as outlined above, Jackson claims, entitling him to reversal and remand.
*518 On this general issue, CSX notes that the plaintiff failed to file a motion to recuse the trial judge and in fact failed to even move for a mistrial during the proceedings. The trial judge's comments in the post-trial conference are insufficient, CSX says, to overcome the presumption that a trial judge is impartial.
At the post-trial conference, the trial judge stated, in pertinent part, as follows:
Since this Motion for New Trial crossed my desk[,] I have thought about the issue of whether the jury verdict is subject to adjustment on the basis of a judgment notwithstanding the verdict or that the Court should grant a new trial or grant an additur. I wish to note for purposes of a reviewing court that significant sums of money were offered to settle this case, the jury ultimately coming down with a verdict of $62,000 in damages and finding the plaintiff seventy percent at fault for his own injuries.
From my own perspective insofar as the nature of the injuries that the plaintiff suffered, I find that for an operated surgical disc, that under the circumstances, the total award of $62,000 is inadequate. Under the case of Anderson v. New Orleans Public Service, decided by the Louisiana Supreme Court dealing with judgments notwithstanding the verdict, when there is a misstake [sic] in the jury interrogatory form committed by the jury where they have not reached a reasonable amount, materially, manifestly, that reasonable minds could differ I am supposed to grant a judgment notwithstanding the verdict reviewing the entire judgment.
However, I do not embrace the quantum of lost specials in this matter that the plaintiff tried to put forth. I view this matter asthat the injuries to Mr. Jackson's neck as being worth a significant sum of money, and he also suffered injury to his leg. I find that there is a permanent impairment of some nature to his whole body as a result of this injury, but under the circumstances of this case, his past lost wage claim and his future lost wage claim, loss of earning capacity, do not reach anywhere near the level as claimed by the plaintiff in closing arguments, and I specifically reject the evaluations and sums given by Melville Wolfeson [sic] under those circumstances. However, given the circumstances of the liability issue I find that the jury was alsoI disagree with the jury and I find that Mr. Jackson was more responsible for his own injury than seventy percent, and I would place it closer to ninety percent.
Based upon same, of the totality of this thing, I decline to touch the verdict in any way, shape or form on the quantum. I leave that to an Appellate Court. Accordingly, the motions are denied, but I do agree it meets the test of Anderson. You have to get it corrected above.
* * * * * *
I told you gentleman [sic] after the last settlement offer if it was within the framework I was not going to touch it. You live by the sword[,] you die by the sword. At this point, even though I think it should have been settled at that figure, I am indeed frustrated by it. I felt the settlement offer was appropriate under the circumstances. It should have been taken, and I told you I was not going to touch it after that. I throw up my hands. I now throw up my hands and say, guys, good luck to both of you. I wish you the best. I can't touch you.
* * * * * *
Under Louisiana lawI would not have found what they found, but the quantum backs down to that figure. It may actually be a little less.
(Emphasis added.)
Generally, a trial judge is presumed to be impartial; thus, a party contending that a judge did not act impartially is required to present some factual basis to support his claim and may not rely on conclusory allegations. Pierce v. Charity Hospital of Louisiana, 550 So.2d 211, 213 (La.App. 4th Cir.), writ denied, 551 So.2d 1341 (La.1989). Adverse rulings alone are insufficient. Earles v. Ahlstedt, 591 So.2d 741 (La.App. 1st Cir. 1991).
*519 Trial judges must always act professionally. The declared public beliefs of a judge affect the quality of judging in our legal system. When a trial judge believes that a fundamental or substantial error which produced an injustice occurred in the trial, he should correct that error in post-trial practice, if possible, rather than making statements, then telling the parties to seek relief in a higher court. A trial judge acts inappropriately and unprofessionally when he acknowledges an error in the judicial process, then requires the parties to appeal for correction of the patent error, when he has the authority and the opportunity to correct the error at the trial court level.
Obviously, the trial judge's comments in the instant case reflecting his displeasure at Jackson's lawyer for failing to settle were intemperate and unrestrained; however, our review of the record reveals no evidence that the trial judge's feelings on that issue affected his behavior at trial. Nothing in the trial court record indicates that the trial judge displayed any particular prejudice against Jackson or in favor of CSX. The trial in this matter was not particularly competitive; both parties simply presented their evidence and reserved their objections for serious matters. The trial judge ruled against CSX as often as he ruled against Jackson on various objections and other issues which arose during the course of the trial. Thus, we find no merit in Jackson's arguments on this issue.
We note however that the trial judge's attitude toward Jackson's attorney's refusal to settle the case for "an appropriate sum" did apparently influence his rulings on the post-trial motions for new trial, judgment notwithstanding the verdict, and additur. In point of fact, the trial judge stated his belief that the $62,000 quantum was abusively low under the circumstances of the case. As the discussion below indicates, the manifest error in the quantum assigned by the jury in this case is obvious by simple reference to settled Louisiana jurisprudential rules in cases involving plaintiffs with similar injuries. Nevertheless, the trial judge refused to fulfill his duty to correct the judgment on post-trial motions, deferring instead to this court. The trial judge has a duty to modify the jury's findings if he finds grounds for doing so, regardless of his feelings or opinions concerning the actions of the parties pre-trial.
The trial judge's stated reason for refusing to modify the judgment was that he disagreed with the jury's assigning only 70 percent of the liability for the accident to Jackson. He indicated that he would have assigned at least 90 percent of the liability for the accident to Jackson, and that the final award reached by raising the quantum, then raising the comparative negligence, would have been nearly the same as that reached by the jury. However, the defendant never requested that Jackson's comparative negligence be increased either before the trial judge in the post-trial motions, or before this court on appeal; thus, the trial judge's reasons for denying the post-trial motions were fallacious.

A. Voir dire of Jackson's vocational evaluation expert witness

In his first specific assignment of error, Jackson claims that the trial judge improperly allowed CSX to argue that his vocational evaluation expert witness, Bobby Roberts, was not qualified, resulting in the planting of a "seed of doubt" in the minds of the jurors concerning the reliability of the expert's testimony. CSX should have raised the issue of the witness' qualifications in a motion in limine, Jackson claims. Otherwise, the trial judge should have excluded the jury during CSX's questioning concerning his qualifications, Jackson claims.
CSX answers this argument by pointing out that Jackson's counsel himself opened the door to questioning concerning the witness's qualifications. Moreover, Jackson failed to file a motion requesting that the jury be excused during the questioning of the witness. Thus, Jackson has waived his right to complain about the voir dire of the expert witness, CSX claims.
We find no merit in Jackson's arguments on this issue. The record reveals that Jackson's attorney originally asked Mr. Roberts to explain the differences between a vocational evaluation specialist and a vocational *520 rehabilitation counselor, and to explain the differences in the duties of a vocational evaluation specialist and the duties of a vocational rehabilitation counselor. Thereafter, CSX's attorney asked Mr. Roberts questions concerning a declaratory judgment suit filed by the Louisiana Board for the licensing of professional vocational counselors based on a complaint that Mr. Roberts had acted outside his area of expertise.
The defendant is entitled to traverse the plaintiff's expert's qualifications. Given the fact that Jackson's attorney opened the door to discussion of the issue of Mr. Roberts' qualifications, the trial judge's decision to allow CSX to ask questions on that issue was not so prejudicial as to rise to the level of reversible error.

B. Repetitive jury instructions

In his second specific assignment of error, Jackson claims that the jury instructions given by the trial judge improperly overstated the duty owed by the railroad, while unduly emphasizing comparative negligence. According to Jackson, the trial judge improperly refused to instruct the jury concerning whether CSX could have used a safer method, and improperly accepted CSX's jury instruction that the railroad was not liable unless it should have anticipated that Jackson would choose an unsafe method of mounting the tote car. The instructions concerning unsafe methods were confusing, in light of the fact that his entire case was based on his claim that CSX failed to use proper illumination, Jackson argues.
Moreover, Jackson lists 19 different "repetitive" jury charges taken from CSX's requested jury charges. Because the trial judge placed so much emphasis on circumstances that would relieve CSX from liability, the jury forgot the basic instruction "that the defendant owed Jackson a non-delegable duty to exercise reasonable care and to provide him with a safe place to work," the result of which diluted his federally-created claim, Jackson says.
CSX answers this assignment of error by citing general law concerning review of jury instructions as a whole to determine claims of prejudice. Taken as a whole, the trial judge's instructions were "eminently correct" under FELA jurisprudence, CSX claims. Moreover, the "charges as a whole fairly apprised the jury of the elements of plaintiff's cause of action in negligence under FELA without any favoritism to the defendant railroad," CSX claims.
When reviewing jury instructions, an appellate court is under a mandate to consider the jury instructions as a whole when trying to determine whether those instructions were so incorrect or deficient as to constitute reversible error. Brown v. White, 405 So.2d 555, 558 (La.App. 4th Cir.1981), aff'd, 430 So.2d 16 (La.1982). Moreover, an appellate court may not reverse a verdict on the basis of incorrect or deficient jury charges unless the charge, as a whole, is so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts. Anderson v. Fowler Trucking, Inc., 506 So.2d 1319, 1324-25 (La. App. 2d Cir.), writ denied, 512 So.2d 434 (La.1987).
In the instant case, Jackson does not claim that the jury charges were incorrect, only that they were prejudicially repetitive. Our review of the record indicates that the charges were in fact correct. Moreover, we agree with Jackson that, on balance, the law charges contained substantially more information explaining what is not covered by CSX's non-delegable duty than what is covered.
On the other hand, a trial judge has a duty to give a law charge which is balanced to the claims of both parties. However, the obligation to give a law charge and the amount of information relative to the claims of each party explained by the law charge depends, in large part, on the complexity of the law governing the particular controversy. This case was brought under the provisions of FELA; unquestionably, the trial judge properly stated the defendant's duty owed to the plaintiff. However, the explanation of the full law governing the controversy required that the trial judge give greater detail in his instructions regarding the responsibilities which do not fall under a defendant employee's non-delegable duty to provide a safe *521 work place than the instructions to define the duty itself.
The trial judge's instructions in the instant case properly explained the entirety of the applicable law. The balance of the instructions was influenced, not so much by repetitiveness, as claimed by the plaintiff, as by the obligation to state the entire law. We find that, under the circumstances presented by this case, the jury charges were not overbalanced in favor of CSX. The court could perhaps have better explained CSX's non-delegable duty to provide Jackson with a safe working place; however, the duty itself was properly stated. Certainly, when read together in conjunction with the evidence and argument, as required by the law, the jury charges are not so prejudicial as to constitute reversible error.
Moreover, the jury obviously understood the instructions given the fact that it found that CSX was liable for Jackson's injuries, despite its obvious belief that Jackson himself was in the best position to prevent those injuries. On the jury interrogatory form, the jury found that CSX was negligent with respect to Jackson's accident and that that negligence was a legal cause of the accident. Despite the trial judge's statements concerning the ways in which CSX could avoid liability, the jury obviously understood that CSX had a non-delegable duty to provide a safe work place. Thus, we find no merit in Jackson's arguments on this issue.

C. Testimony of CSX's vocational rehabilitation counselor

By his third specific assignment of error, Jackson claims that the trial judge improperly allowed CSX's vocational rehabilitation counselor to testify beyond the scope of the report produced by CSX in response to Jackson's discovery requests. Specifically, Jackson claims that his case was essentially "ambushed" because the expert was allowed to testify about hearsay material concerning his conversations with potential employers about the job market, which conversations occurred just days prior to the trial in this case.
In answering this argument, CSX claims that the trial court properly allowed its vocational rehabilitation expert to testify concerning CSX's rehabilitation program and concerning the results of his own labor market survey of available jobs which were appropriate for Jackson. That testimony was part and parcel of his qualifications as a vocational rehabilitation expert, CSX says. Jackson's claim that he was "surprised" by the testimony is without merit, CSX claims, because the pre-trial order did not limit the testimony of any witness, and the witness was listed on the pre-trial order.
One of Jackson's primary contentions in this case was that his earnings since the accident had been limited by the physical restrictions imposed by his doctor. CSX was entitled to traverse Jackson's testimony on that issue and attempt to prove that other higher-paying jobs within Jackson's limitations were available. Jackson's arguments on this issue have no merit. The fact that the vocational rehabilitation counselor conducted the survey just prior to the trial in an effort to produce the most up-to-date evidence possible is not grounds for objection. The trial court's decision to admit the evidence was not erroneous under the circumstances presented by this case. We find no merit in Jackson's arguments on this issue.
Moreover, the testimony presented by CSX did not "ambush" the plaintiff's case because it was neither unexpected or irrelevant. Jackson made a claim for past and future wage losses; CSX simply presented what it considered the best evidence to contradict that claim. The fact that other jobs within Jackson's limitations were available in the community, as well as the fact that CSX offered Jackson rehabilitation and employment were proper subjects for the presentation of testimony. The trial judge properly exercised his duty to control the flow of evidence on the issues before it.

D. Admission of CSX letters

By his fourth specific assignment of error, Jackson claims that the trial judge improperly allowed CSX to introduce letters allegedly written to him by medical officers of CSX, which letters purported to offer Jackson vocational rehabilitation, despite the *522 fact the medical officers who wrote the letters were not present to testify and thus could not be cross examined. Moreover, according to Jackson, CSX offered letters which were not produced prior to trial, which letters purported to offer employment opportunities to Jackson. Moreover, the trial judge refused his request to offer his letters written in rebuttal to the letters; his letters were proffered.
On the other hand, CSX claims that the letters were admitted on cross-examination in response to Jackson's testimony that he did not recall whether CSX offered him vocational rehabilitation. Moreover, CSX rebuts Jackson's claim that the "self-serving" letters were "fabricated" by CSX, arguing that most of the letters pre-date the filing of Jackson's suit.
The record in the instant case is replete with evidence that CSX made several attempts to provide rehabilitation to Jackson and in fact tried to help Jackson return to his job, or to train for a different job with the company. Even Jackson's wife said that she was aware of those efforts. Nevertheless, Jackson originally testified that he could not recall whether CSX had offered him rehabilitation or an opportunity to return to work. Thereafter, on cross-examination, Jackson admitted that he failed to respond to those efforts on the advice of his attorney. CSX had the right to offer evidence to rebut Jackson's previous implication that he had not been offered rehabilitation or employment. Under the circumstances, we find no reversible error in the trial court's actions on this issue.
The same reasoning applies to the trial court's denial of Jackson's request to admit the letters written by his attorney in response to CSX's offers of rehabilitation and employment. Jackson admitted on the stand that he failed to take advantage of those offers on the advise of his attorney; the letters simply explained the attorney's reasons for advising Jackson to refuse the offers. Any error in the trial court's denial of the request to admit the letters was harmless.

II. Quantum

Although the federal jurisprudence applicable to FELA cases prohibits this court from performing a de novo review following a finding that legal error so tainted the fact-finding process as to require reversal, the court is not prohibited by FELA from amending the judgment because of a factual error. Thus, if we find manifest error in the quantum assigned, we may apply Louisiana law to determine if the jury clearly abused its "much discretion" in setting the quantum. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379, (1994). If we find an abuse of discretion, we may then, under Louisiana law, raise or lower the award to the lowest or highest amount that could have been awarded by a reasonable fact finder. Id.
Jackson makes two primary arguments concerning the inadequacy of the $62,000 jury award: (1) that the total award was insufficient to compensate him for a ruptured disc injury which required surgery, and (2) that he was not awarded damages for loss past and future wages.

A. Minimum total award

Concerning the first argument, Jackson points inter alia to this court's opinion in Redondo v. Consolidated Freightways Corp., 529 So.2d 1296 (La.App. 4th Cir.), writ denied, 533 So.2d 363 (La.1988), in which the court held that $100,000 is the minimum award for a ruptured lumbar disc requiring surgery. In that case, this court found that "a general damage award of $100,000 is the low range for a herniated lumbar disc resulting in a laminectomy after conservative treatment." Id., 529 So.2d at 1300. In so finding, the court indicated that any award less than $100,000 for injuries such as those suffered by the plaintiff in this case is abusively low.
In the instant case, Dr. Vogel initially diagnosed a cervical strain and attempted to treat Jackson conservatively. However, when Jackson failed to improve, Dr. Vogel ordered a myelogram/CTscan which revealed several bulging and herniated discs. The most serious problem, according to Dr. Vogel, was at C6-7, which had almost completely *523 effaced and the disc had moved into the canal where the nerve root travels, resulting in what is commonly called a "pinched nerve." To correct the problem, Dr. Vogel performed an anterior cervical fusion, after which Jackson was hospitalized for more than two days. Dr. Vogel assigned a 10 to 20 percent permanent partial total body medical impairment and restricted Jackson from lifting, pushing, or pulling more than 50 pounds or repeatedly hyperextending or flexing his neck.
As the trial judge noted in his comments at the post-trial conference, the $62,000 indeed was a clear abuse of the trial court's "much discretion" in light of this court's previous decision concerning the minimum general damages to be awarded by a plaintiff sustaining the same type of injury sustained by Jackson. Thus, the trial court improperly denied the post-trial motions on the quantum issue.
Moreover, we find that the $100,000 award set by this court ten years ago as the lowest reasonable general damage award for a plaintiff who suffered a serious spinal injury which required surgery is no longer adequate. Considering inflation, we find that $125,000 is the lowest reasonable award for Jackson's injury. Accordingly, we amend the judgment to award Jackson $125,000 in general damages, to be reduced by his 70 percent comparative negligence.

Lost past and future wages
Concerning the second argument, Jackson cites the testimony of his expert witness that he will suffer $431,156 in loss of future earning, which was based on the assumption that, if the accident had not occurred, Jackson would have become a CSX engineer. Jackson claims that the jury improperly failed to award damages for that amount based on the testimony of his expert.
In answering this argument, CSX focuses on the jury's finding that Jackson was 70 comparatively negligent in causing his own accident, pointing to the fact that Jackson was provided a lantern and had been trained in the safe method to mount tote cars, and quoting testimony that the area was adequately illuminated at the time of the accident. CSX also claims that the verdict is not abusively low, pointing to conflicting testimony. CSX claims that the credibility of both Jackson and his treating physicians was suspect. Accordingly, the jury may have concluded that the neck injury was not caused by the accident, CSX implies. Moreover, CSX claims that the effects of the injuries on Jackson were relatively low. Finally, according to CSX, Jackson did not suffer lost future wages because he could be earning as much as he would have earned by becoming an engineer at the railroad, if he so chose.
Our review of the record reveals that the issue of past and future lost wages was strongly contested by the two parties and that much of the evidence presented was directed toward that issue. While Jackson himself claimed that he was limited by his injury and his economic expert calculated lost earning capacity at more than $400,000, the jury also heard testimony that Jackson could return to work for the railroad as an engineer, earning more than he was earning prior to the accident. Moreover, the jury heard Jackson's testimony that he has minimal effects from the injury. Finally, CSX's vocational rehabilitation expert testified concerning several jobs available to Jackson for which he could receive pay commensurate with what he was earning at the railroad. Jackson testified that he liked his job; the record evidence is sufficient to support a jury finding that Jackson's limited income since the accident and in the future was a matter of his own choosing rather than a consequence of the accident. Thus, we find no clear abuse of the jury's "much discretion" in failing to award Jackson damages for lost past or future wages.

2. CSX's answer to appeal

In its answer to Jackson's appeal, CSX claims that the interest on court costs should begin on the date the costs are ascertained, not on the date the judgment was signed. In support of this argument, CSX cites jurisprudence holding that prejudgment interest is not recoverable in FELA cases.
In Louisiana, interest on an award of court costs begins to run on the date of *524 the judgment fixing the costs. Cajun Electric v. Owens-Corning Fiberglass, 616 So.2d 645, 647 (La.1993). Thus, we amend the judgment to award interest on court costs only from the date of the judgment fixing those costs.
CSX also seeks the costs of defending the instant appeal. However, since we have amended the award to increase Jackson's general damages to $125,000, CSX is not entitled to recover the costs of this appeal.

Conclusion
Accordingly, the trial court judgment is amended to award Jackson $125,000, reduced by his 70 percent comparative negligence, and to award interest on court costs only from the date of the judgment fixing those costs. In all other respects, the trial court judgment is affirmed.
AMENDED; AFFIRMED.
CIACCIO, J., concurs in the result.
CIACCIO, Judge, concurring.
I agree that the damage award was inadequate and should be raised to $125,000.
However, I do not agree that the trial judge abused his discretion in denying the post trial motions because his evaluation of plaintiff's claim did not justify an additur.
With regard to the trial court's comments on the settlement discussions, I find them to be a statement of an obvious fact: a plaintiff who declines a settlement offer takes the risk of an adverse jury verdict.

ON REHEARING
PER CURIAM.
We grant rehearing for the sole purpose of correcting technical errors and calculations of the amended award to the plaintiff. Plaintiff William Jackson is awarded $125,000, reduced by his 70 percent comparative negligence, to $37,500.